Mark L. Eisenhut (18359)
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel:   (949) 717-3000
Fax:   (949) 717-3100
meisenhut@calljensen.com

Attorneys for Defendant Timothy Ballard

# UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| CELESTE BORYS, MARY HALL, SASHLEIGHA HIGHTOWER, KRISTA KACEY, KIRA LYNCH, and BREE RIGHTER,<br><br>Plaintiffs,<br><br>vs.<br><br>TIMOTHY BALLARD, an individual; MATTHEW COOPER, an individual; MICHAEL PORENTA, an individual; OPERATION UNDERGROUND RAILROAD, INC., AKA OUR RESCUE, a Utah non-profit corporation; MS WILLIAMS & COMPANY, LLC, a Wyoming Limited Liability Company, and DOES 1 through 100,<br><br>Defendants. | **DEFENDANT TIMOTHY BALLARD'S MOTION FOR TERMINATING SANCTIONS**<br><br><br>Case No.  2:24-CV-000794-RJS<br><br>Judge Robert J. Shelby |

Defendant Timothy Ballard ("Mr. Ballard"), by and through undersigned counsel, hereby moves the Court to impose terminating sanctions and an award of costs and fees against Celeste Borys, Sashleigha Hightower, Mary Hall, Kira Lynch, Amy Davis, and Krista Kacey (collectively referred to as "Plaintiffs"), pursuant to Federal Rule of Civil Procedure Rules 26 and 37 and this Court's inherent power for the egregious theft and repeated use and public disclosure of Mr. Ballard's attorney-client-privileged and personal information. A motion based on these same facts was already brought in the related case of *Borys v. Ballard*, Case No. 230907663, where Judge Shaughnessy terminated the claims of plaintiff Celeste Borys. Judge Shaughnessy found these facts to be worse than *Xyngular* (which this court adjudicated in 2016) and all other authorities referenced in the "Underlying Motion." He found the conduct at issue "lies far outside the bounds of permissible litigation behavior," including "intentional conduct designed to circumvent the discovery process," which was "more serious and egregious than the conduct in [*Xyngular* or any other known case]." (See Eisenhut Decl. Ex. E ("Borys Order"), pp. 7, 45.)

## I.    INTRODUCTION AND CONCISE STATEMENT OF REQUESTED RELIEF

Ms. Borys, one of the Plaintiffs in this case, and her counsel (who represent all Plaintiffs herein) have already been found to have committed the egregious misconduct set forth herein. The same counsel who represented Ms. Borys in the related case represent all Plaintiffs (including Ms. Borys) in this case. On October 9, 2023 all Plaintiffs except Ms. Borys filed a state court complaint based on the same allegations in this federal case. The next day, October 10, Ms. Borys filed a nearly identical state court case using the same attorneys. They initially filed anonymously, but not much later they came out publicly when all Plaintiffs held press conferences together concerning their lawsuits. They later filed the instant federal case based on nearly identical allegations against Mr. Ballard. Ms. Borys stole documents from Mr. Ballard in late October, long after Plaintiffs had sued Mr. Ballard. She passed those documents to her and the other Plaintiffs' counsel.

Rather than contact Mr. Ballard's counsel and return the stolen privileged documents, Plaintiffs' counsel then immediately and very publicly amended the other Plaintiffs' state court case and attached many of the documents as exhibits, including clearly-marked privileged documents.

As Utah Criminal Code 76-6-408(2) makes clear, "An actor commits theft by receiving stolen property if the actor receives, retains, or disposes of the property of another knowing that the property is stolen, or believing that the property is probably stolen …." Here, Plaintiffs knew the documents were stolen from their litigation opponent Mr. Ballard; they received the Stolen Documents; and they immediately exploited them by filing numerous Stolen Documents in various cases, and disseminating the privileged and private Stolen Documents publicly through press releases, social media posts, and other means. All Plaintiffs herein are equally guilty of taking and exploiting private and privileged documents, and all must face the same terminating sanctions consequences.

After multiple rounds of briefing and a robust 2-day evidentiary hearing in the *Borys* matter, Judge Shaughnessy described this conduct as "deliberate and egregious," imposed terminating sanctions, and warned of the profound prejudice such misconduct creates. (Borys Order pp. 5-6.) In their FAC in the *WW, et al. v. Ballard,* Case No. 230907617 matter alone, Plaintiffs published no less than twelve of the 92 Stolen Documents (BMFS[1] 3), including: (1) Exhibit Q (FAC (BMFS 3)), a clearly-marked Privileged and Confidential attorney letter with the following in all-caps, bold, and red print:

**PRIVILEGED AND CONFIDENTIAL**
**ATTORNEY WORK PRODUCT**
**ATTORNEY-CLIENT COMMUNICATION**
**DRAFT**

The fact that Plaintiffs and their counsel blasted this and multiple other Stolen Documents to the public is appalling; (2) Exhibit J to Plaintiffs' FAC, a clearly privileged attorney

---

[1] All references to Ballard Motion for Sanctions (BMFS) are attached to the Declaration of Alexis Federico in support of Ballard's Motion for Terminating Sanctions as submitted in the original filing, which is attached to Exhibit A of the Declaration of Mark Eisenhut in support of this Motion.

DEFENDANT TIMOTHY BALLARD'S MOTION FOR TERMINATING SANCTIONS

"Memorandum"; and (3) Exhibit K to the FAC, starting at page 2, a privileged and work-product-protected draft letter with the words **"DRAFT-ATTORNEY CLIENT PRIVILEGED"** emblazoned on the top of the document. Note Plaintiffs added page 1, which is separate from the page 2 memo, in an apparent attempt to make it look as if the privileges for the memo had been waived. The email at page 1 had no attachment to it.

In his 58-page ruling, Judge Shaughnessy thoroughly reviewed the record, which included the initial briefings, a hearing, a two-day evidentiary trial, then several rounds of post-trial briefings. At the end, he came to the only conclusion he could come to—terminating Ms. Borys' claims against Mr. Ballard. The same outcome should be imposed here for Plaintiffs' theft and exploitation of Mr. Ballard's private, privileged documents.

## II.    STATEMENT OF FACTS

### A.    Thorough Prior Briefings Set Foundational Facts

Each of the briefs submitted by Mr. Ballard to Judge Shaughnessy in support of his request for terminating sanctions is attached to the Declaration of Mark L. Eisenhut. (Eisenhut Decl. ¶¶ 1-4; Exhs. A-D.) They include: (1) Motion for Terminating Sanctions, with supporting declarations and exhibits; (2) Reply re: Motion for Terminating Sanctions; (3) Defendant Timothy Ballard's Terminating Sanctions Post-Hearing Brief, with supporting evidence; (4) Defendant Ballard's Response Re Terminating Sanctions Written Closing Argument (together "Underlying Record"). Because the relevant underlying facts have been fully and thoroughly briefed, Mr. Ballard submits and relies on those briefs, together with Judge Shaughnessy's 58-page ruling, as the foundational facts upon which this Motion is based, with the following added discussion.

### B.    Plaintiffs Stole the Documents and Immediately Publicized Them By Attaching Them to Various Court Filings and to Press Releases

Ms. Borys, who had been Mr. Ballard's executive assistant, admitted she had authorization to use her password to access his files only for purposes of performing duties as her EA. After she resigned, her password access was not immediately revoked. However, she admitted under oath she had no authorization to access the files after her

employment ended. Nonetheless, after suing Mr. Ballard, on behalf of the entire group of Plaintiffs, Ms. Borys used her password access to rifle through more than 40,000 of Mr. Ballard's protected files, stealing at least 92 documents (many privileged). (Eisenhut Decl. Ex. C, TR1[2], 183:19-25.) "[W]hat Ms. Borys did is no different than if she had used a key to access Mr. Ballard's office in the dark of night to secretly photocopy documents from locked file drawers, including documents that were marked as privileged." (Borys Order, p. 6.)

Plaintiffs here are represented by the same counsel who represent them in the *Borys* and *WW* matters in state court. Acting in concert, they simultaneously filed and promoted their state suits. Through Ms. Borys, they then stole and immediately weaponized privileged documents to advance their claims. Representative examples include: BMFS 80 (Ex. J to the FAC in *WW*) – a privileged attorney memorandum; BMFS 79 (Ex. K) – a privileged draft memorandum falsely presented as an email attachment to suggest waiver; BMFS 67 (Ex. M) – an attorney-client email chain addressing litigation strategy; and BMFS 85 (Ex. Q) – a Quinn Emanuel draft letter to counsel prominently stamped "PRIVILEGED AND CONFIDENTIAL."

The same counsel used and published Stolen Documents in other cases they had against Mr. Ballard, including *Whitehead* (BMFS 4) and *Moya (*BMFS 19). As the *Borys* court found, Ms. Borys continued accessing Mr. Ballard's files even after initiating litigation, and her attorneys knowingly accepted and published those materials—conduct the court described as "deliberate and egregious" and "far outside the bounds of permissible litigation behavior" (Borys Order 5–8, 45, 51–52). The same attorneys—and one of the same Plaintiffs—stand before this Court, in possession of documents and information which they should not have but for their unlawful actions. As soon as Mr. Ballard and his counsel learned of the document theft and their public dissemination, Mr. Ballard promptly objected. (Eisenhut Decl. Ex. C, TR1, 243:16-20.)

---

[2] All references to "TR1" refer to the transcript of the hearing, Day 1 (December 30, 2024) and "TR2" refer to the transcript of the hearing, Day 2 (December 31, 2024). Both are attached to Exhibit C of the Eisenhut Declaration.

DEFENDANT TIMOTHY BALLARD'S MOTION FOR TERMINATING SANCTIONS

### C.     The *Borys* Court Found Deliberate, Egregious, Willful Misconduct

The *Borys* court made damning findings that go to the heart of why terminating sanctions are warranted in this case. (*See* Borys Order *generally*.) After litigation began, Plaintiffs and their counsel knowingly took, received, used, and widely publicized Mr. Ballard's private privileged materials; never notified defense counsel; refused demands to return the documents; and continued their conduct even after promising the court they would stop. (Borys Order 5–6.) While they did not agree to stop the conduct until months after Mr. Ballard's counsel demanded it stop, after they finally made such promise to the court, they publicly filed additional Stolen Documents three days later. (*Id*. at 5, 39.) As Judge Shaughnessy held, this was "deliberate and egregious" misconduct that circumvented discovery, "far outside the bounds of permissible litigation behavior," akin to using a key to enter an opponent's office at night to photocopy privileged files. (*Id*. at 6–8, 45.)

"[T]he record clearly and convincingly establishes that the conduct … was intentional or willful. It was a deliberate effort to bypass discovery and the … rules of civil procedure … The nature of the conduct and the refusal to accept any accountability or responsibility for it, together with the use to which materials were put, weighs very strongly in favor of terminating sanctions." (*Id*. at 51.) The same parties and attorneys are now pursuing claims in this Court based on the same alleged facts. Nothing less than terminating sanctions can adequately address the conduct.

### D. Following the Borys Order, Plaintiffs' Counsel Refused to Withdraw as Counsel

Shortly after Judge Shaughnessy issued the Borys Order, Mr. Ballard's counsel asked Mr. Mortensen, Ms. Rasmussen, and their team of attorneys to withdraw from this and other cases adverse to Mr. Ballard. (Eisenhut Decl. ¶ 6; Ex. F.) They had been found by a court to have improperly obtained voluminous documentation that is privileged, confidential, and private. The Borys Court found that they publicly disseminated the improperly obtained materials, yet they should have immediately notified Mr. Ballard's

- 6 -

counsel returned the documents. The court found that they stubbornly refused to remedy such wrongs after a request to do so (when Mr. Ballard "demanded the documents be returned, Ms. Borys's counsel refused" (*Id*. at 5). The court found they refused "to accept any accountability or responsibility" (*id*. at 51), and that their conduct was "deliberate and egregious, particularly their casual disregard of potentially privileged information." (*Id*. at 6) By obtaining Mr. Ballard's private, confidential, privileged information and not only failing to return it but studying it, dissecting it, and aggressively using it, they clearly created a conflict for themselves by putting themselves into the shoes of Mr. Ballard's counsel (or someone within his attorney-client privileged circle). They could not possibly continue to represent parties adverse to Mr. Ballard. (Rule Prof. Conduct 4.4 (providing required procedures for remedying receipt of privileged documents and prohibiting "unwarranted intrusions into privileged relationships, such as the client-lawyer relationship"); Utah Ethics Opinion 99-01 ("A lawyer is required to bring to the attention of opposing counsel the receipt of" privileged documents)). One would think in light of all of the above, Plaintiffs' counsel would at the very least step down as counsel for Plaintiffs. Perhaps unsurprisingly in light of their record of misconduct, they refused to withdraw. (Eisenhut Decl. ¶ 6; Ex. F.)

## III.    AS CONFIRMED IN *XYNGULAR*, TERMINATING SANCTIONS ARE NECESSARY HERE

Federal Rules of Civil Procedure 26 and 37, along with the Court's inherent power, not only authorize but even urge terminating sanctions. As Judge Shaughnessy concluded, this case has all of the misconduct featured in the case adjudicated by this court, *Xyngular Corporation v Schenkel,* 200 F.Supp.3d 1273 (2016) (aff'd at 890 F.3d 868 (2018), and more.

DEFENDANT TIMOTHY BALLARD'S MOTION FOR TERMINATING SANCTIONS

**1. This Case is on all fours with *Xyngular*, But With More Aggravating Factors**

As in *Xyngular*, it was Plaintiffs' coordinated theft and use of stolen materials, not mere passive receipt, that contaminates these proceedings. This Court in *Xyngular* issued terminating sanctions with fewer aggravating factors than are present here.

In *Xyngular*, a shareholder obtained company documents from an insider without authorization, used them to support his claims, and was sanctioned because his "self-help" bypassed the discovery process and undermined the integrity of the proceedings. Here, Plaintiffs and their counsel did the same, but on a broader and more deliberate scale: Through Ms. Borys, Plaintiffs rifled through more than 40,000 of Mr. Ballard's protected files, stealing at least 92 documents (many privileged). Plaintiffs immediately attached those materials to public pleadings and shared them with the press and public—conduct Judge Shaughnessy already found "deliberate and egregious." (Borys Order p. 6.) Whereas Schenkel's misuse remained internal to the case, Plaintiffs publicly weaponized Mr. Ballard's privileged information, compounding the prejudice and irreparably tainting the proceedings.

**2. Aggravating Factors Above Those in *Xyngular* Strongly Advocate for Termination**

*Aggravating Factor 1: Public Filing and Media Dissemination*

As discussed above, separate and apart from the lack of merit of the lawsuits, Plaintiffs and their counsel have repeatedly filed Stolen Documents publicly and disseminated them to the press. They have held multiple press conferences, and extensively used the media, all with the aim of attacking and destroying Mr. Ballard and his family publicly. (BMFS 16, Eisenhut Decl. Ex. C, pp. 15-16.) The Plaintiffs and their counsel's use of the legal process as part of an ugly effort to destroy Mr. Ballard in the press is wrong. The fact that they are using Stolen Documents as part of their smear campaign makes their conduct even more repugnant.

*Aggravating Factor 2: Obviously Privileged Documents Were Stolen, Filed Publicly, and Disseminated to Media*

There is simply no excuse for the publication and dissemination to the press of a voluminous number of Stolen Documents that were not only privileged, but clearly marked so that any grade schooler would know of the privilege. It does not take a lawyer to know stealing these documents, and then publishing them for the world to see, is wrong. It is shocking, however, that lawyers contributed to this conduct. (Eisenhut Decl. Ex. C, pp. 60-65.)

*Aggravating Factor 3: Plaintiffs Stole Documents After Initiating Litigation*

Unlike the *Xyngular* party (Schenkel) who acquired documents only prior to litigation, Plaintiffs via Ms. Borys gathered Stolen Documents days before suing in preparation for litigation, and also weeks *after* suing. (BMFS 3, 4, 26; BMFS 23, 91:6-79.) Plaintiffs then used these Stolen Documents in their publicly-filed proceedings against Mr. Ballard, press releases, and elsewhere.

In sum, all of the factors present in *Xyngular* also exist here. Those were more than sufficient to lead this Court in *Xyngular* to conclude that nothing short of terminating sanctions plus an award of costs and fees would be appropriate. Here, with multiple additional and egregious aggravating factors, nothing less than terminating sanctions with an award of fees can be justified.

## 3. Plaintiffs and their Counsel Are Unequivocally At Fault

Even just taking into consideration how Plaintiffs' attorneys purportedly received the Stolen Documents raises grave concerns. Ms. Borys testified that she accessed Mr. Ballard's account from her home two times after engaging counsel, perused the 40,000-plus documents, printed selections of them, hand-delivered most and texted a few others to counsel. (TR1, 183:19-25, TR1 193:13-21, TR1, 242:14-243:5.) Why would she hand-deliver them, rather than share them via email which would leave an evidentiary trail? What was she hiding?

DEFENDANT TIMOTHY BALLARD'S MOTION FOR TERMINATING SANCTIONS

Plaintiffs and their counsel flagrantly violated fundamental duties of candor and privilege. Upon receiving materials facially marked "ATTORNEY–CLIENT PRIVILEGED," they were required by Federal Rule 26(b)(5)(B), ABA Rules of Professional Conduct, Rule 4.4 and Utah Ethics Opinion 99-01 (1999) to notify opposing counsel and refrain from use. Instead, they did the opposite—publicly filed the documents in various court proceedings and released them to the media. Their misconduct was compounded by the fraudulent alteration of BMFS 3 (Ex. K), where a non-privileged email was improperly combined with a separate 27-page memorandum plainly labeled "DRAFT–ATTORNEY CLIENT PRIVILEGED" to create the false appearance of waiver. The privilege was never waived. These are not technical lapses but deliberate breaches of duty and integrity. Because counsel exploited, published, and defended the use of stolen privileged materials, Rule 37(b)(5) authorizes sanctions against both Plaintiffs and their attorneys, jointly and severally, for all fees, expenses, and costs caused by their misconduct.

**4. Mr. Ballard Has Been Meaningfully Prejudiced By Plaintiffs' And Their Counsel's Conduct**

This prejudice flows directly from Plaintiffs' and their shared counsel's own choices. They stole documents, claimed they were relevant, and—rather than seeking them through lawful discovery (most of which would not have been subject to discovery disclosure)—published them with counsel's assistance through various court filings and media promotion. The *Borys* court found that Ms. Borys took at least 92 documents, none mentioning her by name or related to her claims; instead, she "searched for documents that she or her attorneys believed would cast OUR, Mr. Ballard, and others in a negative light generally." (Borys Order, p. 51.) The court further found that counsel accepted those materials, attached them to public filings "making them publicly accessible," referenced their contents "in press releases," and refused to return them when asked. (*Id*. at 5–6, 52.)

As in *Xyngular*, this misconduct circumvented the discovery process, depriving Mr. Ballard of his right to assert privilege, seek protective orders, and control the

disclosure of his private and privileged communications. (*See* 200 F. Supp. 3d at 1321–24.) Many of the 92 documents would never have been discoverable at all, yet were broadcast worldwide, tainting the jury pool and contaminating other proceedings. These are not abstract harms; they are the predictable result of deliberate theft, coordinated use, and public exploitation of privileged materials. Once those documents were released, the bell could not be un-rung, and neither new counsel nor any curative measure can erase what was learned or restore the confidentiality destroyed. The prejudice to Mr. Ballard is complete and irreparable, and terminating sanctions are the only effective remedy to protect the integrity of these proceedings.

Given the magnitude and willfulness of this misconduct, no lesser sanction could cure the prejudice or preserve confidence in the judicial process; terminating sanctions are both necessary and just.

## IV.  CONCLUSION

For all of the above reasons, and for all reasons stated in the Underlying Motion and Underlying Record, Mr. Ballard requests the Court dismiss the causes of action against him with prejudice in their entirety and award him fees, costs, and expenses, payable jointly and severally by Plaintiffs and their attorneys.

Dated:  October 10, 2025

CALL & JENSEN
A Professional Corporation
Mark L. Eisenhut


By: */s/Mark L. Eisenhut*
     Mark L. Eisenhut

Attorneys for Defendant Timothy Ballard

DEFENDANT TIMOTHY BALLARD'S MOTION FOR TERMINATING SANCTIONS

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2025, I electronically filed the foregoing document described as **DEFENDANT TIMOTHY BALLARD'S MOTION FOR TERMINATING SANCTIONS** with the Clerk of the Court using the CM/ECF System which will send notification of such filing via electronic mail to all counsel of record.

/s/Mark L. Eisenhut