Mark L. Eisenhut (18359)
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel:   (949) 717-3000
Fax:   (949) 717-3100
meisenhut@calljensen.com

Attorneys for Defendant Timothy Ballard

# UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| CELESTE BORYS, MARY HALL, SASHLEIGHA HIGHTOWER, KRISTA KACEY, KIRA LYNCH, and BREE RIGHTER,<br><br>    Plaintiffs,<br><br>    vs.<br><br>TIMOTHY BALLARD, an individual; MATTHEW COOPER, an individual; MICHAEL PORENTA, an individual; OPERATION UNDERGROUND RAILROAD, INC., AKA OUR RESCUE, a Utah non-profit corporation; MS WILLIAMS & COMPANY, LLC, a Wyoming Limited Liability Company, and DOES 1 through 100,<br><br>    Defendants. | **DEFENDANT TIMOTHY BALLARD'S REPLY IN SUPPORT OF HIS MOTION FOR TERMINATING SANCTIONS**<br><br>Case No.  2:24-CV-000794-RJS<br><br>Judge Robert J. Shelby |

## I.    INTRODUCTION

One cannot knowingly receive a stolen vehicle, drive it around, and then establish innocence by claiming "I didn't steal it, my friend did." Plaintiffs' Opposition attempts to obscure the fundamental issue before this Court: their own deliberate, coordinated theft and repeated misuse of Ballard's privileged and confidential documents. Rather than confront their misconduct—which has already resulted in terminating sanctions against Plaintiff Borys in Utah state court—Plaintiffs devote pages to attacking Ballard personally and to disparaging Judge Shaughnessy, whose detailed 58-page order followed thousands of pages of briefing and documents, the presentation of witnesses, a multi-day evidentiary hearing, and months of independent judicial analysis. Their effort to cast Judge Shaughnessy as misguided or ill-informed is not only baseless, it is legally irrelevant. Unless reversed, his findings stand, and they squarely establish that Plaintiff Borys and her counsel engaged in "deliberate and egregious" misconduct by stealing, altering, and publicly disseminating privileged materials.

The record here shows that the remaining Plaintiffs were not innocent bystanders. They were beneficiaries and conspiring participants in the same strategy. Represented by the same counsel, they received, reviewed, and weaponized the stolen documents; they filed them publicly in the *WW* action; and they now pursue this federal action with full knowledge of privileged information that neither they nor their counsel should have ever possessed.[1] Plaintiffs' attempt to segment themselves from Borys is untenable. Their shared representation, unified litigation strategy, coordinated filings, and continued reliance on stolen materials make clear that all Plaintiffs ratified and exploited the misconduct. There is no mechanism—legal or practical—to unring this

---

[1] Plaintiffs also suggest that Ballard delayed in bringing this Motion. That assertion is meritless. Ballard explained to Judge Shaughnessy that he proceeded first in his court to avoid duplicative motions and inconsistent rulings across multiple jurisdictions, and that he would present the resulting findings in the related actions as appropriate. This approach promoted efficiency and judicial economy—not delay. In any event, Plaintiffs identify no prejudice from the timing of this Motion, and none exists.

DEFENDANT TIMOTHY BALLARD'S REPLY IN SUPPORT OF HIS MOTION FOR TERMINATING SANCTIONS

bell, to compartmentalize what Plaintiffs and their counsel have learned, or to restore the privilege they intentionally destroyed.

Equally misplaced is counsel's latest attempt to reposition themselves as the sole actors responsible for the wrongdoing. In the *Borys* action, counsel distanced themselves from responsibility for Borys's theft. Now, facing terminating sanctions against all Plaintiffs, they pivot again seeking to shift blame away from their clients. This shifting-goalpost strategy is as transparent as it is unavailing. Even if counsel was responsible, Plaintiffs are bound by their counsel's conduct.

Plaintiffs saturate their Opposition with unrelated accusations, media-driven rhetoric, and falsely inflammatory portrayals of Ballard—echoing the very public-relations campaign that Judge Shaughnessy identified as intertwined with the misuse of stolen documents. None of this is relevant to the issue before the Court, other than showing the prejudice. Plaintiffs' false allegations against Ballard, however sensationalized, cannot excuse their unlawful discovery practices, revive privileges they destroyed, or eliminate prejudices they created.

This Motion is about Plaintiffs' conduct, not their narrative. And Plaintiffs' conduct—together with that of their counsel—fits squarely within the category of "deliberate, egregious" misconduct that *Xyngular* and *Ehrenhaus* recognize as warranting termination. Plaintiffs' theft, alteration, dissemination, and strategic use of privileged documents has irreparably compromised the integrity of these proceedings. No lesser sanction can cure the harm.

## II.   ARGUMENT

### A.   Plaintiffs Misstate The Legal Standard

Plaintiffs' iteration of the rules expressed and relied upon by this Court in *Xyngular Corporation v. Schenkel* (D. Utah 2016) 200 F.Supp.3d 1273 is severely lacking. Dismissal is appropriate where the party seeking terminating sanctions proves "willfulness, bad faith, or some fault" by clear and convincing evidence. (*Id.*)

> Conduct amounts to "bad faith" if it shows "'intentional or reckless disregard' of the rules." … But actual ill will is not required;

"substantial and prejudicial obduracy" or conduct that delays or disrupts the litigation can be enough. … And "fault" concerns "'the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation.'" … A movant makes either of these showings by clear and convincing evidence "if the evidence places in the ultimate factfinder an abiding conviction that the truth of its factual contentions [is] highly probable." [internal citations omitted]

(*Id*. at 1301-1302.) The Motion unquestionably establishes "willfulness, bad faith, or some fault" and this Court has the inherent power, at any stage, to issue terminating sanctions. (*Chambers v. NASCO, Inc.* (1991) 501 U.S. 32, 44-46.)

### B.    The Other Plaintiffs Cannot Separate Themselves From Borys

#### 1.    Plaintiffs Share The Same Counsel And Strategy

Plaintiffs cannot segment themselves from Plaintiff Borys or their counsel. All Plaintiffs are represented by the same counsel who received the stolen documents, reviewed them, and then publicly filed privileged materials in multiple forums—conduct the *Borys* court found "deliberate and egregious." (Motion p. 8.) Indeed, these Plaintiffs attached stolen documents to their amended complaint in the *WW* action, thereby using the illicitly obtained materials to advance their own litigation strategy and public narrative. Given this unified representation and coordinated use of privileged materials, there is no practical or legal mechanism to insulate Plaintiffs from the misconduct or compartmentalize the tainted knowledge their shared counsel continues to possess. The privileged information has already been weaponized on behalf of all Plaintiffs, and the bell cannot now be un-rung. As a result, Ballard cannot receive a fair adjudication so long as these Plaintiffs remain in the case.

#### 2.    Plaintiffs Benefitted From And Ratified The Misconduct

Plaintiffs have benefited from and ratified the misconduct that Judge Shaughnessy found in the *Borys* matter. Their attempt to manufacture wrongdoing on behalf of Ballard to justify their own is untenable and misguided. It has been a well-established foundational principle of American jurisprudence that a litigant cannot profit from her own wrongdoing. (*See Riggs v. Palmer* (N.Y. 1889) 115 N.Y. 506, 511-

512 ["No one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime"].) That principle squarely applies here. Instead of returning stolen documents to Ballard or destroying them, Plaintiffs affirmatively adopted, ratified, and further weaponized the stolen documents by filing and disseminating them publicly, with the ultimate goal of obtaining money from Ballard.

### C.   Plaintiffs' Distorted View Of Judge Shaughnessy's Order Is Irrelevant

Plaintiffs devote substantial portions of their Opposition to attacking Judge Shaughnessy—suggesting that he "misunderstood" the facts, "ignored" key context, misapplied the law, and essentially "got it wrong." Their brief reads less like a legal opposition and more like an imagined narrative crafted to vilify Ballard and Judge Shaughnessy. But this Court is not reviewing Judge Shaughnessy's ruling for error (nor did he make any), and Plaintiffs' inflammatory characterizations serve only to highlight the weakness of their position.

Plaintiffs, other than a fleeting sentence in their introduction, never confront the core point: Judge Shaughnessy presided over a two-day evidentiary proceeding, reviewed extensive pre- and post-hearing briefing, heard live testimony, assessed credibility, and issued a detailed, 58-page order finding deliberate, egregious misconduct stemming from the theft of Ballard's privileged documents. (Motion Ex. E.) Those findings are the product of a full evidentiary record and judicial fact-finding entitled to deference.

Plaintiffs' effort to criticize Judge Shaughnessy's ruling is legally irrelevant. Federal courts routinely rely on state-court factual determinations in a variety of contexts, including issue-preclusion. For example, in *Dunham v. Saratoga Springs City*, 2:19-cv-00641-RJS (D. Utah Sept. 7, 2023), this Court relied on—and gave preclusive effect to—factual findings made by the Utah state district court after an evidentiary suppression hearing. This Court did not reweigh the evidence, revisit credibility, or

DEFENDANT TIMOTHY BALLARD'S REPLY IN SUPPORT OF HIS MOTION FOR TERMINATING SANCTIONS

second-guess the state judge's analysis. Here, the Shaughnessy findings stand as authoritative determinations that Plaintiffs engaged in intentional misconduct.

### D.    The *Ehrenhaus* Factors Mandate This Case Be Dismissed

As *Xyngular* emphasized, sanctions must "adequately punish [the] misconduct, remedy the prejudice to and harm suffered by the [opposing party] and the judicial process, deter future litigants from engaging in this type of misconduct, and engender public trust in the integrity of the judicial proceedings." (*Xyngular* at 1273, 1322.) The factors here are far more aggravated than in *Xyngular*—and each independently supports dismissal. Plaintiffs' pattern of deliberate theft, alteration, dissemination, and strategic exploitation of privileged documents resulted in severe and irreversible prejudice. The judicial process has been compromised, culpability is undeniable, no warning was required, and no lesser sanction can begin to remedy the harm.

### 1.    Prejudice is severe and irreversible

Prejudice here is complete, concrete, and irreversible. Plaintiffs through Borys accessed more than 40,000 of Ballard's private files and stole at least 92 documents, including plainly labeled "privileged" documents. (Motion p. 5.) Plaintiffs and their counsel then reviewed these materials, publicly filed them in multiple state proceedings, and disseminated them through coordinated media efforts. (*Id*. at 8.) These acts destroyed the confidentiality of Ballard's privileged communications, tainted the litigation environment, and armed Plaintiffs with knowledge they can never un-know. Once those documents were released, the bell could not be un-rung, and no instruction, exclusion, or substitution of counsel can erase the prejudice. (*Id*. at 11.)

### 2.    Plaintiffs Unquestionably Interfered With The Judicial Process

Plaintiffs' claim that they "have caused zero interference with the judicial process" is false. Unlawfully accessing Ballard's private email account, stealing privileged documents, altering documents, attaching them to complaints, and loudly publicizing them, are extreme examples of interference. (*Xyngular*.) The judicial

DEFENDANT TIMOTHY BALLARD'S REPLY IN SUPPORT OF HIS MOTION FOR TERMINATING SANCTIONS

process cannot function when litigants treat private, privileged files as a resource to mine and weaponize.

### 3.    Plaintiffs Are Culpable

Plaintiffs' claim of "lack of involvement" is fabricated, misguided, and unsupported. Like in *Xyngular*, there is no evidence that Plaintiffs declined information and documents obtained unlawfully from Borys. Rather, the opposite is true. (*Id*. at 1322.) Plaintiffs, and each of them, "made a calculated decision to obtain the documents for strategic use in litigation" which shows a high level of culpability. (*Id*.)

And attorney fault is client fault. Attorneys act as the agents of their clients, and their clients are responsible for litigation misconduct undertaken on their behalf and for their benefit. (*See Gripe v. City of Enid, Okl.* (10th Cir. 2002) 312 F.3d 1184, 1188-1189 ["A litigant is bound by the actions its attorney, and the relative innocence of the litigant does not constitute grounds for relief"].) *Gripe* went on to further explain:

> "Plaintiff argues against the harshness of penalizing him for his attorney's conduct. But there is nothing novel here. Those who act through agents are customarily bound by their agents' mistakes. It is no different when the agent is an attorney. ... (It should be noted, however, that the mistreated client is not totally without a remedy. There may be a meritorious malpractice claim against the attorney.)"

(*Id*.) The United States Supreme Court confirmed:

> "There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney."

(*Link v. Wabash R.R. Co.* (1962) 370 U.S. 626, 633-364.) These principles are even stronger here, given each of these Plaintiffs has chosen to continue using the same attorneys who participated in the misconduct, Mr. Mortensen and Ms. Rasmussen (who refused Ballard's demand that they withdraw).

DEFENDANT TIMOTHY BALLARD'S REPLY IN SUPPORT OF HIS MOTION FOR TERMINATING SANCTIONS

Counsel's attempt to present themselves as the exclusive wrongdoers while insulating their clients is both disingenuous and legally irrelevant. Ballard previously sought the withdrawal of Plaintiffs' counsel precisely because of the misconduct at issue. Counsel refused. If counsel truly believed the misconduct was exclusively theirs, they could have withdrawn. (Motion pp. 6-7.) However, withdrawal would not have remedied the prejudice: Plaintiffs would still retain the improperly obtained privileged documents and information, and the litigation would still be indelibly tainted.

Plaintiffs are the litigants. Pleadings filed in the *WW* action using stolen documents—including those filed by Plaintiffs who now attempt to distance themselves from Borys—are filings attributable to them, not merely to their attorneys. While Plaintiffs may have malpractice claims against their attorneys, for purposes of this Motion, attorney fault is client fault.

Plaintiffs' fleeting invocation of "due process" adds nothing to their argument. Due process in the sanctions context requires notice of the alleged misconduct and an opportunity to be heard before final judgment. (*G.J.B. & Associates, Inc. v. Singleton* (10th Cir. 1990) 913 F.2d 824, 830.) Plaintiffs have had both in ample supply.

Plaintiffs benefited from the theft of privileged materials; they filed and relied on them as exhibits; they published them in hopes of gaining advantage over Ballard; and they continue to possess information no litigant is ever permitted to obtain through self-help. They are abundantly culpable under *Ehrenhaus* and *Xyngular*.

### 4.     A warning is not a prerequisite to dismissal

A trial court need not "warn" Plaintiffs to refrain from misconduct before terminating, especially when the misconduct is the type here that everybody knows is wrong. (*See Xyngular* at 1322.) "[N]o notice of any type need be given by the court prior to dismissal." (*Stanley v. Cont'l Oil Co.* (10th Cir. 1976) 536 F.2d 914, 917.)

### 5.     Lesser sanctions cannot cure the harm

Plaintiffs' suggestion that a remedy short of dismissal could cure the harm ignores the reality of what has already occurred. The prejudice and process-harm here

DEFENDANT TIMOTHY BALLARD'S REPLY IN SUPPORT OF HIS MOTION FOR TERMINATING SANCTIONS

are irreversible. Plaintiffs and their counsel wrongly obtained, reviewed, manipulated, altered, and weaponized privileged information; they disseminated it publicly; they leveraged it across coordinated lawsuits; and counsel refused to withdraw when given the opportunity to mitigate at least some of the damage. Lesser sanctions cannot restore fairness, cannot protect the integrity of these proceedings, and cannot rewrite what Plaintiffs and their counsel now know. Terminating sanctions are the only remedy capable of addressing the profound and incurable harm their misconduct has caused.

### E.     Plaintiffs' "Unclean Hands" Argument Fails

Plaintiffs make wholly unsupported wild assertions that Ballard "stole" documents from OUR. That is false, and Plaintiffs submitted no evidence of it. Also, while some of what Plaintiffs stole from Ballard's Gmail were related to "OUR," all belonged to Ballard (and some also belonged to OUR). (Motion, Ex. A, pp. 9-12.) Ballard created OUR and was its face and leader for approximately 10 years. (Motion, pp. 2-3.) OUR knew Ballard used his Gmail for personal and OUR business purposes (Motion, Ex. C, p. 11). What Plaintiffs fail to acknowledge is that Borys signed multiple agreements with OUR agreeing to protect and not disclose OUR information and documents – so she had obligations both as to Ballard's confidential information and OUR's information, regardless of where she might be able to access or steal them. (Motion, Ex. E, pp. 9-12).

Everything that Borys stole from Ballard came from his private Gmail and Google Drive, which Ballard also used for his professional endeavors. She admitted she had no right to take any of the documents she took, and Judge Shaughnessy so found. (Motion, Ex. C, p. 5; Ex. E.)

Unlike the caselaw cited by Plaintiffs, Ballard did not do anything "unclean" in connection with Plaintiffs' theft of his documents.  Even if Ballard should have done something different vis-à-vis OUR, that would not entitle Plaintiffs to pilfer through his private Gmail account and steal, alter, weaponize, and publicly disseminate privileged documents. Wrongful conduct as between OUR and/or Ballard does not excuse

Plaintiffs' theft of OUR's and Ballard's documents, nor does it invoke equity to excuse Plaintiffs' theft. Regarding the stolen documents, Borys acted wrongfully towards both OUR and Ballard, and neither OUR nor Ballard did anything wrong towards Borys. The doctrine of unclean hands does not excuse unlawful self-help discovery; it does not permit litigants to bypass Rule 26 or the ABA Rules of Professional Conduct; and it does not immunize Plaintiffs from sanctions when they intentionally invade another party's private accounts.

As Judge Shaughnessy confirmed, Plaintiffs' attempt to invoke unclean hands based on allegations of sexual assault is grossly misplaced, as unproven allegations of sexual assault have nothing to do with Plaintiffs' choice to steal and exploit private documents. He expressly rejected this argument and stated that "the court cannot excuse Ms. Borys's conduct even if it assumes that she is a victim" and that her and her counsel's invocation of a theme of "the ends justify the means" cannot absolve their unlawful conduct. (Motion, Ex. E, p. 8.)

Likewise, unpersuasive is Plaintiffs' fleeting contention that this Court is somehow foreclosed from imposing sanctions based on its inherent power because Ballard has separate defamation lawsuits against Plaintiffs. Plaintiffs made this same argument in their closing brief before Judge Shaughnessy, and he rejected it by granting terminating sanctions. The Court's inherent powers to protect the integrity of its own proceedings and punish misconduct are not a substitute for compensatory relief. Whether Ballard succeeds in his defamation actions cannot undo the prejudice caused by Plaintiffs here who stole, altered, and weaponized his privileged materials. Nor do his separate defamation actions have anything to do with this Court's authority to address the misconduct that has already tainted this proceeding.

Ultimately, Plaintiffs' unclean hands argument is nothing more than a red herring—a distraction designed to shift the Court's attention from their own deliberate, egregious misconduct. It has no relevance to the issues before this Court, does not mitigate their wrongdoing, and does not alter the reality that Plaintiffs and their counsel

intentionally compromised the integrity of these proceedings. Terminating sanctions remain the only adequate remedy.

**F.    The Appeal Of Judge Shaughnessy's Order Does Not Bar Sanctions Here**

Plaintiffs' repeated emphasis that Judge Shaughnessy's order is on appeal does nothing to diminish its force or relevance, nor does it preclude this Court from relying on the detailed factual findings contained in that ruling. An appeal does not vacate or nullify a judgment; unless stated otherwise, the order remains operative and its findings remain valid. (*Coleman v. Tollefson* (2015) 575 U.S. 532, 539; *see also Evans v. Utah*, 21 F.Supp.3d 1192, 1207 (D. Utah 2014).) Plaintiffs cite no authority—because none exists—holding that a federal court must ignore a state court's factual findings merely because appellate review is pending. Even the state appellate court must give deference to Judge Shaughnessy's factual findings. (URCP Rule 52(a))

Here, Judge Shaughnessy's order followed extensive briefing, a multi-day evidentiary hearing, credibility determinations, and express findings of "deliberate and egregious" misconduct. Those findings exist today; they remain unreversed; and they directly corroborate the record before this Court. This Court is fully entitled to consider the prior proceedings and ruling in evaluating Plaintiffs' pervasive abuse of privilege and the integrity of these proceedings.

## III.    CONCLUSION

For the foregoing reasons, Ballard respectfully requests that terminating sanctions be granted in his favor against all Plaintiffs.

Dated:  December 15, 2025

CALL & JENSEN
A Professional Corporation
Mark L. Eisenhut

By:/s/ *Mark L. Eisenhut*
        Mark L. Eisenhut
Attorneys for Defendant Timothy Ballard

DEFENDANT TIMOTHY BALLARD'S REPLY IN SUPPORT OF HIS MOTION FOR TERMINATING SANCTIONS

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2025, I electronically filed the foregoing document described as **DEFENDANT TIMOTHY BALLARD'S REPLY IN SUPPORT OF HIS MOTION FOR TERMINATING SANCTIONS** with the Clerk of the Court using the CM/ECF System which will send notification of such filing via electronic mail to all counsel of record.


/s/    *Cathy Miller*

DEFENDANT TIMOTHY BALLARD'S REPLY IN SUPPORT OF HIS MOTION FOR TERMINATING SANCTIONS