IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CELESTE BORYS, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>TIMOTHY BALLARD, et al.,<br><br>   Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:24-cv-00794-RJS-JCB<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Before the court is Defendant Aerial Recovery Inc.'s Motion to Dismiss.[1]  For the reasons stated below, the court GRANTS IN PART, and DENIES IN PART the Motion.

**BACKGROUND**

The following facts are drawn from the Second Amended Complaint.[2]  In reviewing the Motion to Dismiss, the court "accept[s] as true all well-pleaded facts" and "view[s] those facts in the light most favorable to the nonmoving party."[3]

Defendant Timothy Ballard is an anti-human trafficking activist and founder of Operation Underground Railroad, Inc. (O.U.R.), and Aerial Recovery, Inc. is a Tennessee non-profit corporation.[4]  Plaintiffs Celeste Borys, Mary Hall, Sashleigha Hightower, Krista Kacey, Kira Lynch, and Bree Righter previously worked for Ballard as part of undercover operations to uncover human trafficking schemes.[5]  Plaintiffs bring claims against Defendants under the

---

[1] Dkt. 68, *Motion to Dismiss for Failure to State a Claim and Memorandum in Support* (*Motion*).

[2] Dkt. 57, *Second Amended Complaint for Anti-Trafficking* (*SAC*).

[3] *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005) (quoting *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998)).

[4] *SAC* ¶¶ 7–8.

[5] *See id.* ¶ 20.

Trafficking Victims Protection Reauthorization Act of 2003 (TVPRA) for allegations of forced labor and sex trafficking.[6]

Ballard founded O.U.R., which he envisioned as an anti-human trafficking non-profit.[7] Ballard and his associates at Aerial Recovery developed a tactic to uncover trafficking rings called the "Couples Ruse."[8] Under the Couples Ruse, Ballard and various female undercover operators (among them, the Plaintiffs) would pretend to be a romantic couple to infiltrate sex trafficking circles.[9] To ostensibly convince the traffickers that they were legitimate customers, the pair would exchanges acts that were sexual in nature.[10] Aerial Recovery trained people in the Couples Ruse despite at least one former employee of the organization having knowledge at the time that the scheme had no basis for use in any undercover operation.[11]

Ballard induced Plaintiffs to participate in the Couples Ruse using his background as a former Department of Homeland Security Agent and his political and religious connections.[12] Over the course of the Ruse, Ballard progressively demanded increased sexual interaction including touching, oral sex, and intercourse.[13] Ballard exerted control over the Plaintiffs by invoking spiritual authority, and by telling the women that their cooperation was required to save children from being trafficked.[14] Ballard sexually assaulted a number of his Couples Ruse partners.[15]

---

[6] *Id.* ¶¶ 223–35 (bringing claims under 18 U.S.C. §§ 1589, 1590, 1591, 1595).

[7] *Id.* ¶¶ 27–29.

[8] *Id.* ¶ 33.

[9] *Id.* ¶ 20.

[10] *Id.*

[11] *Id.* ¶ 35.

[12] *Id.* ¶ 36.

[13] *Id.* ¶ 37.

[14] *Id.* ¶¶ 37, 73.

[15] *Id.* ¶ 41.

Plaintiffs were not allowed to discuss the Couples Ruse or its operations with anyone.[16] They were isolated from one another, required to sign non-disclosure agreements, and warned at risk of severe consequences not to speak of their activities with anyone, including O.U.R. employees and senior staff.[17] Plaintiffs were not allowed to have cell phones during operations and trainings, and they completely relied on Ballard for transportation to and from the various destinations.[18]

O.U.R. employees and counselors were aware that Ballard was sexually abusing his Couple Ruse partners.[19] Following an investigation into Ballard's activities at O.U.R., Ballard resigned from his position at the organization.[20]

Aerial Recovery subsequently hired Ballard despite knowledge of the accusations of sexual misconduct.[21] Aerial Recovery also appointed Ballard to its board of directors.[22] Aerial Recovery and Ballard are cooperating to develop a promotional film together.[23] While attending a Board of Directors meeting in Nashville, Tennessee, Ballard broke into Borys's Airbnb and sexually assaulted her.[24] Ballard also brought Righter to a private island owned by Britini Turner and Jeremy Locke of Aerial Recovery, where she did not feel free nor had the means to leave the island on her own.[25]

---

[16] *Id.* ¶ 53.

[17] *Id.*

[18] *Id.* ¶¶ 54–55.

[19] *Id.* ¶ 40.

[20] *Id.* ¶ 41.

[21] *Id.* ¶ 43.

[22] *See id.* ¶ 76.

[23] *Id.* ¶ 44.

[24] *Id.* ¶ 76.

[25] *Id.* ¶ 206.

**PROCEDURAL HISTORY**

On October 22, 2024, Plaintiffs filed the Complaint against Ballard, O.U.R., and several other Defendants.[26]  On May 27, 2025, Plaintiffs amended the Complaint adding Aerial Recovery as a Defendant.[27]  Plaintiffs filed the Second Amended Complaint on November 21, 2025.[28]  Plaintiff subsequently dismissed O.U.R. and other Defendants, leaving only Ballard and Aerial Recovery as the named Defendants.[29]  On December 18, 2025, Aerial Recovery filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[30]  Plaintiffs filed a Memorandum in Opposition on January 14, 2026.[31] The Motion is fully briefed and ripe for review.[32]

**LEGAL STANDARDS**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move the court to dismiss an action for failing "to state a claim upon which relief can be granted."[33]  To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[34]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[35]  When determining whether a complaint meets these criteria, the

---

[26] Dkt. 2, *Complaint for Anti-Trafficking.*

[27] Dkt. 8, *First Amended Complaint for Anti-Trafficking.*

[28] *SAC.*

[29] Dkt. 59, *Stipulated Motion to Dismiss*; Dkt. 60, *Notice from the Court.*

[30] *Motion.*

[31] Dkt. 78, *Plaintiff's Memorandum in Opposition to Aerial Recovery Inc.'s Motion to Dismiss for Failure to State a Claim* (*Opposition*).

[32] Local Rule 7-1(a)(4)(A) permits a movant to file a reply within 14 days.  Aerial Recovery did not file a Reply. *See generally Docket.*

[33] Fed. R. Civ. P. 12(b)(6).

[34] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[35] *Id.* (citing *Twombly*, 550 U.S. at 556).

court will "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief."[36]  The Tenth Circuit has observed there is a "low bar for surviving a motion to dismiss, and a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."[37]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[38]  "Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient."[39]

## ANALYSIS

Plaintiffs claim Aerial Recovery is liable for violations of the TVPRA.[40]  The TVPRA provides victims of sex trafficking and forced labor the ability to bring a civil action against a perpetrator who violates the statute (direct liability), or anyone who "knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of" the statute (indirect liability).[41]  Plaintiffs' claims for relief fall under two categories of TVPRA violations: (1) liability for forced labor under 18 U.S.C. § 1589, and (2) liability for sex trafficking under § 1591.[42]  Plaintiffs assert Aerial Recovery is both directly and indirectly liable under both provisions.[43]  Aerial Recovery challenges the sufficiency of all of Plaintiffs'

---

[36] *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009).

[37] *Clinton v. Sec. Ben. Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) (citation modified).

[38] *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1267 (10th Cir. 2020).

[39] *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019).

[40] *SAC* ¶¶ 223–35.

[41] 18 U.S.C. § 1595(a).

[42] *SAC* ¶¶ 223–35.

[43] *Opposition* at 11.

theories.[44]  For reasons discussed below, the court concludes Plaintiffs fail to adequately plead Aerial Recovery is directly liable for forced labor violations under § 1589, but their allegations sufficiently establish indirect liability under the Section.  Additionally, Plaintiffs sufficiently plead facts plausibly establishing Aerial Recovery is directly and indirectly liable for sex trafficking under § 1591.

## I.      Forced Labor

The court first considers whether Plaintiffs state a claim for relief against Aerial Recovery for forced trafficking under 18 U.S.C. § 1589.  The TVPRA makes it unlawful to "knowingly provide or obtain the labor or services of a person" by means of any "scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."[45] Serious harm "means any harm, whether physical or nonphysical, . . . that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."[46]  Aerial Recovery argues Plaintiffs fail to allege two of the elements: (1) that Aerial Recovery obtained their labor or services through serious harm or threats of serious harm, and (2) that it knowingly or intentionally obtained their labor through such means.[47]  Aerial Recovery further argues the indirect liability claim fails because the SAC does not include facts showing it benefitted from participating in the Couples Ruse venture.[48]

---

[44] *Motion* at 7–11.

[45] 18 U.S.C. § 1589(a)(4).

[46] *Id.* § 1589(c)(2).

[47] *Motion* at 7.

[48] *Id.*

*A. Coercion and Labor*

The court first considers whether Plaintiffs plead facts showing Aerial Recovery procured their labor through coercion or threats of harm. Aerial Recovery argues the SAC is bereft of such facts.[49] Meanwhile, Plaintiffs argue they were coerced into forced labor when they were told others would be harmed if they did not participate in the Couples Ruse.[50]

First, Plaintiffs sufficiently plead they provided labor as part of the Couples Ruse. This labor included working nights and weekends without extra compensation, international travel, training time, and participation in "operations" at locations including strip clubs and massage parlors.[51] Further, Plaintiffs allege they performed sexual acts as part of the Couples Ruse.[52] "[L]abor or services in § 1589 is not limited to work in an economic sense and extends to forced sexual acts."[53] Plaintiffs' allegations include substantial claims of forced sexual acts by Ballard as part of the Couples Ruse, including repetitive sexual contact in training, during operations, and when alone.[54] These facts are sufficient to state a claim for relief.

Second, Plaintiffs sufficiently plead they were forced to perform the labor through coercion. The TVPRA explicitly defines force to include any scheme to "cause the person to believe that, if that person did not perform such labor or services, that person *or another person* would suffer serious harm or physical restraint."[55] Plaintiffs allege they were convinced as part of the scheme that if they did not work with Ballard, "others—including trafficked women and

---

[49] *Id.*

[50] *Opposition* at 4–5.

[51] *See SAC* ¶¶ 71, 126–30, 152, 156, 176–77, 205–06.

[52] *See, e.g., Id.* ¶¶ 126–30, 176–77.

[53] *Bistline v. Parker*, 918 F.3d 849, 872 (10th Cir. 2019).

[54] *See SAC* ¶¶ 106, 159, 162.

[55] 18 U.S.C. § 1589(a)(4) (emphasis added).

children—would continue to be illegally trafficked"[56]  Because the assertion other women and children would remain in trafficking absent Plaintiffs' participation in the Couples Ruse constitutes a threat "another person would suffer serious harm or physical restraint," Plaintiffs sufficiently plead they were forced to provide labor.

### B.  Direct Liability

To establish direct liability under 18 U.S.C. § 1589, Plaintiffs must allege Aerial Recovery knowingly obtained their labor under coercion.[57]  Aerial Recovery argues Plaintiffs fail to plead facts that it actually knew the Couples Ruse was going to be used to support forced labor.[58]  The court agrees.  While Plaintiffs sufficiently allege they were subject to forced labor, they do not allege Aerial Recovery—and not just Ballard alone—was actually aware that the labor they were providing was in fact coerced.[59]  Plaintiffs do not allege that Aerial Recovery's leadership or staff told the Plaintiffs that women and children would continue being trafficked absent their participation in the Couples Ruse, nor do Plaintiffs allege that Aerial Recovery was aware of any coercion.[60]  Plaintiffs only allege Aerial Recovery co-developed the Couples Ruse plan in which women would pose as fake romantic partners with Ballard to infiltrate sex trafficking networks.[61]  But Aerial Recovery's knowledge that such a scheme lacked legitimate basis for undercover operations does not give rise to the inference it knew Plaintiffs were coerced into the ploy.  Accordingly, Plaintiffs fail to state a claim that Aerial Recovery is directly liable under § 1589.

---

[56] *SAC* ¶ 12.

[57] *18 U.S.C. § 1589(a)(4)*.

[58] *Motion* at 8.

[59] *See generally SAC*.

[60] *See generally id.*

[61] *Id.* ¶¶ 34–35.

*C.  Indirect Liability*

To establish Aerial Recovery is indirectly liable for violations of 18 U.S.C. § 1589, Plaintiffs must plead facts showing (1) Aerial Recovery "knowingly benefit[ted]" from the Couples Ruse, and (2) Aerial Recovery "knew or should have known" Ballard, in implementing the scheme, would violate the statute.[62]  Aerial Recovery argues that it did not benefit from its participation in the Couple Ruse.[63]  Meanwhile, Plaintiffs assert that Aerial Recovery benefitted from the scheme with Ballard financially and through added publicity.[64]

The court is persuaded that the SAC sufficiently pleads Aerial Recovery was a knowing beneficiary of the implementation of the Couples Ruse with Ballard.  Plaintiffs allege Aerial Recovery co-developed the Couples Ruse with Ballard,[65] which gives rise to the reasonable inference that the organization viewed some benefit to creating and implementing the scheme. Aerial Recovery also hired Ballard to its board, further cementing its business relationship with him.[66]  Ballard and Aerial Recovery are currently cooperating on producing promotional media activities.[67]  Drawing reasonable inferences in favor of Plaintiffs, as the court must at this stage, the results of these joint activities show the joint venture of the Couples Ruse was valuable to Aerial Recovery.

Additionally, Plaintiffs sufficiently plead Aerial Recovery should have known the Couples Ruse was a scheme for forced labor.  Unlike the actual knowledge requirement for direct liability, indirect liability under TVPRA turns on an objective standard permitting liability

---

[62] *See* 18 U.S.C. § 1595(a).

[63] *Motion* at 7–8.

[64] *Opposition* at 11–12.

[65] *SAC* ¶ 34.

[66] *See id.* ¶ 76.

[67] *Id.* ¶ 44.

based on constructive knowledge that a venture would employ forced labor.[68]  Viewing the facts alleged in the light most favorable to the Plaintiffs, the combination of Ballard's previous sexual misconduct violations and the scheme's specific design of placing women in dangerous and sexually compromised positions with him together constitute sufficient constructive notice at the pleading stage that women would be forced to perform unwanted sexual acts.

Aerial Recovery's argument that Plaintiffs fail to allege the organization constructively knew the Couples Ruse was in fact going to be used to support forced labor are unpersuasive.[69] Citing a Colorado District Court opinion, Aerial Recovery argues courts have required Defendants observe specific "red flags" before imposing indirect liability under TVPRA.[70]  It then draws comparisons to *J.L. v. Best Western International, Inc.*,[71] in which the District of Colorado dismissed TVPRA claims against a hotel because the pleaded facts pertaining to the plaintiff's behavior and appearance while in the hotel were insufficient to alert the hotel's management that a particular individual was being sex trafficked.[72]

Unlike in *J.L.*, the SAC pleads facts that go beyond public appearances of the victim and implicate Aerial Recovery's specific knowledge about the alleged perpetrator.  Amongst these is that Ballard was forced to resign from O.U.R. amid numerous public accusations of sexual

---

[68] *See J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1076 (D. Colo. 2021) ("The knowledge requirement in § 1595 is not recklessness or actual knowledge, but rather negligence."); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 966 (S.D. Ohio 2019) (plaintiff "does not need to prove reckless disregard under § 1595(a), only that the Defendants should have known about the nature of the venture under a negligence standard. This does no[t] require evidence of actual knowledge or conspiracy between Defendants and the trafficker." (citation modified)).

[69] *Motion* at 8–9.

[70] *Id.* at 8 (citing *P.C. v. D Fort Hotel, LLC.*, No. 24-cv-01584-PAB-TPO, 2025 U.S. Dist. LEXIS 2083, at *14 (D. Colo. Feb. 5, 2025)).

[71] 521 F. Supp. 3d 1048 (D. Colo. 2021).

[72] *Motion* at 9 (citing *J.L.*, 521 F. Supp. 3d at 1072).

misconduct.[73]  And with knowledge of these credible public accusations, Aerial Recovery hired Ballard to its board and continued implementing with Ballard a ploy that by design placed women in dangerous and sexually compromised positions with him, all while aware that there was no actual legitimate undercover purpose for doing so.[74]  In contrast to the Best Western hotel in *J.L.*, which did not previously know the identity and background of the perpetrator, Aerial Recovery here was aware that Ballard had substantial public allegations of sexual misconduct against him such that he was forced out of his own organization, O.U.R.[75]  Taken together, the alleged facts plausibly constitute sufficient red flags that Aerial Recovery should have recognized that its venture with Ballard potentially involved forced labor and sexual acts.

## II.   Sex Trafficking

The court next considers whether Plaintiffs sufficiently plead facts showing Aerial Recovery's actions related to the Couples Ruse constituted sex trafficking under the TVPRA. The statute provides liability against anyone who "[1] knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, [or] maintains . . . knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, [or] coercion . . . will be used to [2] cause the person to engage in a commercial sex act."[76]  The same standards for direct and indirect liability apply here as for the forced labor allegations.[77]  Aerial Recovery argues Plaintiffs fail to plead facts showing it knew or should have known that the scheme was being used by others to engage in sex trafficking, nor that it actively coerced Plaintiffs into being sex trafficked.[78]  Aerial

---

[73] *SAC* ¶ 41.

[74] *See id.* ¶¶ 35, 46–47, 52, 76.

[75] *See id.* ¶ 41.

[76] 18 U.S.C. § 1591(a).

[77] *Id.* § 1595(a).

[78] *Motion* at 9–10.

Recovery further argues, as before, that the SAC does not include facts showing it benefitted from the Couples Ruse venture with Ballard.[79]  For the reasons below, the court disagrees.

### A. Commercial Sex Acts

Aerial Recovery does not argue Plaintiffs fail to allege they were subject to commercial sex acts under the Couples Ruse.[80]  Accordingly, the court presumes the element is met in the SAC.

### B. Harbor and Transport

Next, the court considers whether Plaintiffs plead facts showing Aerial Recovery "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], advertise[d], or maintain[ed]" the Plaintiffs for sex trafficking.[81]  Plaintiffs claim Defendants "harbored" the Plaintiffs in violation of TVPRA in two instances: (1) hosting Jordana Bree Righter on Aerial Recovery members Britini Turner and Jeremy Locke's private island where Righter "did not feel free" to leave, and (2) at Aerial Recovery's board meeting in Tennessee, where Ballard sexually assaulted Celeste Borys in her Airbnb.[82]  The TVPRA does not define the term "harbor."[83] Plaintiffs point to a district court opinion that construed harboring to include "knowingly providing lodging to someone for obtaining sexual labor or services."[84]  But, even using the Plaintiffs' proposed definition, the SAC does not allege Righter or Borys were harbored by Aerial Recovery.  With regards to Righter, the Complaint never alleges she was subject to

---

[79] *Id.*

[80] *See Id.* at 9–10.

[81] 18 U.S.C. § 1591(a).

[82] *Opposition* at 7–8.

[83] 18 U.S.C. § 1591(a)(1).

[84] *Mouloki v. Epee*, 262 F. Supp. 3d 685, 698 (N.D. Ill. 2017) (citing *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017)).

commercial sex acts in conjunction with her visit to the island.[85]  She therefore was not kept on the island for the purposes of obtaining sexual labor or services.  In Borys's case, an exhibit to the SAC states Ballard's executive assistant, Maggie Bellone, rented the unit.[86]  If Ballard arranged renting the Airbnb for purposes of forcibly obtaining sexual services from her there, it would appear to constitute harboring, but not by Aerial Recovery.

However, while Plaintiffs do not assert in their Opposition brief that they were "transported" to places where their sexual labor was procured, the Complaint plainly pleads such facts.  The TVPRA does not define the word "transport."[87]  Other courts have applied the ordinary meaning of the word as to "transfer or convey th[e] thing from one place to another."[88]  Plaintiffs allege they were brought to various international destinations such as Mexico City and London where they were subjected to sexual conduct by Ballard as part of the Couples Ruse operations.[89]  Such transportation for purposes of procuring sexual labor therefore satisfies the requirements of 18 U.S.C. § 1591.

### C. Direct Liability

The court next considers whether Plaintiffs stated a claim for direct liability under 18 U.S.C. § 1591.  To prevail on direct liability, Plaintiffs must show Aerial Recovery knew or recklessly disregarded the fact "that means of force, threats of force, fraud, coercion . . . , or any combination of such means" would be used to obtain commercial sexual acts.[90]  Aerial Recovery

---

[85] *See SAC ¶¶* 200–22.

[86] Dkt. 57-21, *Declaration of Deanna Hanks ¶* 4.

[87] *See* 18 U.S.C. § 1591.

[88] *United States v. Lazzaro*, 129 F.4th 514, 525 (8th Cir. 2025) (quotation marks omitted) (quoting *Transport, Merriam-Webster's Collegiate Dictionary*. 1330 (11th ed. 2020)) (collecting cases).

[89] *See SAC ¶¶* 74, 77–79, 126–30, 205–06.

[90] 18 U.S.C. § 1591(a).

argues Plaintiffs do not plead facts showing Aerial Recovery knew the Couples Ruse was being used for inappropriate activity, or that it itself coerced the Plaintiffs into being sex trafficked.[91] Plaintiffs, meanwhile, assert Aerial Recovery used fraud to lure the Plaintiffs into sex trafficking because it was aware that the Couples Ruse was a fraudulent scheme.[92]  The court agrees with Plaintiffs at this stage.

The SAC alleges Aerial Recovery co-developed and trained participants in the Couples Ruse despite knowing it had no legitimate basis for use in any undercover operation.[93]  The Couples Ruse was then portrayed to Plaintiffs as an effective means of uncovering illicit human trafficking.[94]  Plaintiffs were subsequently subjected to sexual conduct by Ballard under the false pretense of saving women and children.[95]  Because Aerial Recovery fraudulently represented the Couples Ruse to be a bona fide method for uncovering sex trafficking while nonetheless aware that such a scheme had no legitimate operational basis, the pleaded facts state a claim for relief against Aerial Recovery for direct liability under 18 U.S.C. § 1595.[96]

### D.  Indirect Liability

Lastly, the court considers whether Plaintiffs state a claim that Aerial Recovery is indirectly liable for sex trafficking under 18 U.S.C. § 1595.  Aerial Recovery again argues that Plaintiffs do not plead facts showing it benefitted from the Couple Ruse venture with Ballard.[97]

---

[91] *Motion* at 10.

[92] *Opposition* at 10.

[93] *SAC* ¶¶ 34–35.

[94] *See id.* ¶¶49–52.

[95] *Id.*

[96] Plaintiffs assert Aerial Recovery is directly liable for both forced labor under 18 U.S.C. § 1589 and sex trafficking under § 1591. *Opposition* at 11. But only the latter provides coverage for those who obtain labor through means of fraud in addition to threats of harm.  Accordingly, the alleged fraud only provides direct liability for sex trafficking by Aerial Recovery.

[97] *Motion* at 10.

14

For the same reasons discussed above, the court disagrees.[98]  Aerial Recovery allegedly participated in a venture with Ballard by creating and implementing the Couples Ruse,[99] and it benefited from promotional activities arising out of the scheme and its relationship with Ballard.[100]  Plaintiffs also sufficiently allege Aerial Recovery also knew or should have known that Ballard was transporting Plaintiffs for obtaining sexual services, considering its knowledge of the public sexual misconduct allegations against him, the design of the Couples Ruse placing Plaintiffs in dangerous and sexually compromised positions with Ballard, and the lack of legitimate reason for subjecting women to the acts under the scheme.[101]  As such, Plaintiffs have sufficiently alleged Aerial Recovery is indirectly liable for engaging in a venture it knew or should have known included sex trafficking.

### CONCLUSION

For the reasons stated above, the court finds that Plaintiffs have plausibly stated claims for relief under 18 U.S.C. §§ 1589, 1591, and 1595.  Accordingly, Defendants' Motion to Dismiss[102] is GRANTED IN PART AND DENIED IN PART. Plaintiffs' cause of action for direct liability for forced labor is dismissed.  But the causes of action for indirect liability for forced labor and both direct and indirect liability for sex trafficking survive.

---

[98] *See supra* Section I.C.

[99] *SAC* ¶ 34.

[100] *See id.* ¶¶ 44.

[101] *Id.* ¶¶ 35, 41.

[102] Dkt. 68.

SO ORDERED this 19th day of May, 2026.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge