IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CELESTE BORYS, et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>TIMOTHY BALLARD, et al.,<br><br>     Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:24-cv-00794-RJS-JCB<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Before the court is Defendant Timothy Ballard's Motion for Terminating Sanctions.[1]  For the reasons stated below, the court GRANTS IN PART and DENIES IN PART the Motion.

## BACKGROUND

### 1.  Allegations in the Complaint

Timothy Ballard is an anti-human trafficking activist and founder of Operation Underground Railroad, Inc. (O.U.R.).[2]  Plaintiffs Celeste Borys, Mary Hall, Sashleigha Hightower, Krista Kacey, Kira Lynch, and Bree Righter previously worked with Ballard as part of undercover operations to expose human trafficking rings.[3]  Additionally, Borys worked for Ballard as a personal assistant.[4]

Ballard founded O.U.R., which he envisioned as an anti-human trafficking non-profit.[5]  Ballard and his associates developed and implemented a tactic called the "Couples Ruse" to

---

[1] Dkt. 39, *Defendant Timothy Ballard's Motion for Terminating Sanctions* (*Motion*); *see also* Dkt. 41, *Sealed Document* (unredacted version of Motion).

[2] Dkt. 57, *Second Amended Complaint for Anti-Trafficking* (*SAC*) ¶ 7; *see also id.* ¶ 36.

[3] *See id.* ¶ 20.

[4] *Id.* ¶ 83.

[5] *Id.* ¶¶ 27–29.

uncover trafficking rings.[6] Under the Couples Ruse, Ballard and various female undercover operators would pretend to be romantic couples to infiltrate sex trafficking circles.[7] The pairs would exchange acts that were sexual in nature to ostensibly convince the traffickers that they were legitimate customers.[8] Using the ploy, Ballard and his various undercover partners conducted "operations" across several international locations.[9]

While at O.U.R., Ballard was accused of sexually inappropriate conduct.[10] Following an investigation, Ballard resigned from the organization.[11] Ballard continued his undercover operations after departing from O.U.R.[12] Plaintiffs allege they were sexually abused by Ballard while participating as his undercover partners in the Couples Ruse scheme.[13]

**2. The Parallel State Court Case and the Factual Findings by the Third District Court.[14]**

On October 10, 2023, Borys filed a lawsuit against Ballard in state court alleging sexual assault and various other related claims.[15] The other five Plaintiffs previously filed a separate state court lawsuit against Ballard alleging similar sexual assault claims.[16]

On May 17, 2024, Ballard filed a Motion for Terminating Sanctions in Borys's state court

---

[6] *Id.* ¶ 33.

[7] *Id.* ¶ 20.

[8] *See id.*

[9] *See id.* ¶¶ 74–76, 205–06.

[10] *Id.* ¶ 41.

[11] *Id.*

[12] *Id.* ¶ 43.

[13] *Id.* ¶ 20.

[14] *Borys v. Ballard*, No. 230907663, at 2–3 (Utah 3rd Dist. Ct. Jul. 18, 2025) (*State Court Order*). The Motion includes the State Court Order as an attachment. *See* Dkt. 39-7, *Exhibit E*.

[15] *Borys v. Ballard,* No. 230907663 (Utah 3rd Dist. Ct. Oct. 10, 2023) Dkt. 3, *Complaint and Jury Demand*.

[16] *WW et al., v. OUR, et al.*, No. 230907617 (Utah 3rd Dist. Ct. Nov. 2, 2023), Dkt. 3, *Complaint.*

case against him.[17]  Ballard alleged that Borys, after resigning her position as executive assistant, illegally accessed his Gmail account, searched tens of thousands documents for evidence against him, and then repeatedly used the documents in her state case and other state court lawsuits against him.[18]  After a two-day evidentiary hearing, the state court granted Ballard's Motion and dismissed Borys's claims.[19]  Judge Todd Shaughnessy made the following factual findings on which he based his decision.

Borys served as an executive assistant to Ballard throughout his time at O.U.R and after he departed.[20]  Borys had real-time and unlimited access to Ballard's business records and some of his personal records, including his Gmail account.[21]  As part of her responsibilities, she actively monitored his emails as they were received.[22]

Borys grew disillusioned with Ballard as the other women made public accusations about his alleged sexual misconduct.[23]  In September 2023, Borys resigned from her position, though she assisted Ballard with onboarding a new executive assistant.[24]  However, Borys did not subsequently log off from Ballard's Google accounts.[25]  Instead, she maintained her real-time

---

[17] *Borys v. Ballard,* No. 230907663 (Utah 3rd Dist. Ct. May. 17, 2024) Dkt. 475, *Defendant Timothy Ballard's Motion for Terminating Sanctions and Request for Hearing.*  The Motion includes the State Court Order as an attachment.  *See* Dkt. 39-2, *Exhibit A, Defendant Timothy Ballard's Motion for Terminating Sanctions and Request for Hearing.*

[18] *Id.* at 9.

[19] *State Court Order* at 1.

[20] *Id.* ¶¶ 15, 32.

[21] *Id.* ¶¶ 7–8.

[22] *Id.* ¶ 8.

[23] *Id.* ¶ 47.

[24] *Id.*

[25] *Id.* ¶¶ 75–76.

access to Ballard's email and Google Drive.[26]  Ballard did not take any steps to remove her at this point.[27]

Borys retained attorneys Alan Mortensen, Suzette Rasmussen, and Mike Green, who were also representing other women suing Ballard for sexual misconduct.[28]  On October 10, 2023, Borys and her husband filed a complaint against Ballard in state court.[29]  At this point, Borys retained full access to Ballard's email and Google Drive.[30]  Ballard removed her access in early November 2023, one month after the litigation began.[31]  Before her access was revoked, Borys read Ballard's emails on multiple occasions, including after she had formally commenced litigation against him.[32]  She also spent hours combing his Google Drive documents.[33]  Borys used search terms to narrow her search to documents involving other high-profile individuals, which indicated her intent was to gather evidence to be used against Ballard.[34]  She also stated in testimony in a separate case against Ballard that she searched the documents to obtain evidence.[35]

Borys informed her attorneys about her access and review of Ballard's Google accounts.[36]  Her attorneys did not instruct her to cease the conduct or inform Ballard's attorneys

---

[26] *Id.*

[27] *Id.* ¶¶ 66–68.

[28] *Id.* ¶¶ 71–74.

[29] *Id.* ¶ 70; *see also Borys v. Ballard,* No. 230907663 (Utah 3rd Dist. Ct. Oct. 10, 2023) Dkt. 3, *Complaint and Jury Demand*.

[30] *State Court Order* ¶¶ 75–76.

[31] *Id.* ¶¶ 68–69.

[32] *Id.* ¶ 75.

[33] *Id.*

[34] *Id.* at 4, ¶ 83 (Borys used search terms including "Sean Reyes," the then-Utah Attorney General, and "Troy Rawlings," the Davis County Attorney purportedly directing a criminal investigation into Ballard.).

[35] *Id.* ¶¶ 81–82.

[36] *Id.* ¶¶ 87–88.

of the issue.  They instead attached the retrieved materials to various public court filings, referenced the content of documents in press releases, and otherwise made use of the documents and information contained therein.[37]  This included documents marked as privileged.[38] Additionally, eleven of the retrieved documents were later publicly filed in a separate case by the five other Plaintiffs against Ballard, *WW et al., v. OUR, et al.*[39]  Two of those documents were marked "attorney-client privilege," and two more were communications between O.U.R. executives and their attorneys.[40]  Borys gave her attorneys permission to use the documents in the cases against Ballard.[41]  Ballard was served with Borys's complaint in early November 2023.[42]  When Ballard learned of the electronic access issue and demanded the documents be returned, Borys's counsel refused.[43]  Ballard subsequently terminated Borys's access to his accounts.[44]

Borys's attorneys continued to publicly file documents wrongfully retrieved from Ballard's digital accounts.[45]  Some of these filings contained unrelated documents compiled together to create the impression that the documents labeled as attorney-client privilege had been

---

[37] *Id.* ¶¶ 88, 98–101, at 5.

[38] *Id.* ¶ 98.

[39] *Id.* ¶ 100 (referencing *WW et al., v. OUR, et al.*, No. 230907617 (Utah 3rd Dist. Ct. Nov. 2, 2023), Dkt. 3, *Complaint*).

[40] *Id.*

[41] *See id.* at ¶¶ 87–88, 91.

[42] *Id.* ¶ 73.

[43] *Id.* ¶¶ 102–103.

[44] *Id.* ¶¶ 68–69.

[45] *Id.* ¶¶ 100–01.

shared with third parties.[46]  Borys's attorneys did not inform Ballard's counsel that they were in possession of documents marked privileged and confidential.[47]

The state court ultimately concluded that the evidence clearly and convincingly showed Borys and her attorneys' conduct was an intentional and willful effort designed to circumvent the discovery process.[48]  Judge Shaughnessy found Borys took between 90 and 100 documents from Ballard's electronic files which she or her attorneys believed would cast the opposing parties in a negative light.[49]  The court found Ballard had been prejudiced by Borys's actions circumventing discovery, resulting in potentially privileged and confidential information being made public.[50] The court concluded that no sanction less severe than dismissal of Borys's claims would be effective in addressing the misconduct, especially considering Borys and her attorneys failed to accept any responsibility.[51]  Accordingly, the court dismissed with prejudice all of Borys's claims against all named defendants.[52]  Borys has since filed an appeal of the decision.[53]

## PROCEDURAL HISTORY

On October 22, 2024, Borys and the other five Plaintiffs filed the Complaint in the case at hand.[54]  The Complaint alleges Ballard and others engaged Plaintiffs in forced labor and sexual services in violation of the Trafficking Victims Protection Reauthorization Act of 2003.[55]

---

[46] *Id.* ¶ 98.

[47] *Id.* ¶ 102.

[48] *Id.* at 51.

[49] *Id.*

[50] *Id.* at 51–53.

[51] *Id.* at 55–57 (citation modified).

[52] *Id.*

[53] *Opposition* at 4.

[54] Dkt. 2, *Complaint for Anti-Trafficking*.

[55] *Id.* ¶¶ 68–62.

Ballard now seeks terminating sanctions against Borys and the other five Plaintiffs in this case based on the conduct found in the parallel state court proceeding.[56] The court heard oral argument on the Motion on April 27, 2026.[57] At the hearing, the court ordered both parties to submit supplement briefing concerning whether issue preclusion applies to Judge Shaughnessy's findings on Borys's conduct.[58] The Motion is fully briefed and ripe for review.[59]

## Legal Standard[60]

Federal courts possess "the inherent power to manage their own proceedings and to control the conduct of those who appear before them."[61] This includes the "ability to select an appropriate sanction" for misconduct.[62] "Because of their potency, inherent powers must be exercised with restraint and discretion."[63]

A sanction of dismissal is only appropriate when the misconduct is shown by clear and convincing evidence to have been "predicated upon willfulness, bad faith, or some fault of" the malfeasant party.[64] Conduct constitutes "bad faith if it shows an 'intentional or reckless

---

[56] *See Motion*.

[57] Dkt. 84, *Minute Entry*.

[58] *Id.*

[59] *See* Dkt. 50, *Memorandum Opposing Defendant Timothy Ballard's Motion for Terminating Sanction* (*Opposition*); Dkt. 67, *Defendant Timothy Ballard's Reply in Support of his Motion for Terminating Sanctions* (*Reply*); Dkt. 85, *Plaintiffs' Brief on Issue Preclusion* (*Plaintiffs Preclusion Brief*); Dkt. 86, *Defendant Timothy Ballard's Additional Briefing on Issue Preclusion* (*Ballard Preclusion Brief*); Dkt. 87, *Plaintiffs' Response Brief on Issue Preclusion* (*Plaintiffs Preclusion Reply*); Dkt. 88, *Defendant Timothy Ballard's Reply in Support of His Additional Briefing on Issue Preclusion* (*Ballard Preclusion Reply*).

[60] Ballard seeks terminating sanctions against Plaintiffs under Federal Rules of Civil Procedures 26 and 37, in addition to the court's inherent powers *Motion* at 2. Because relief is proper under the court's inherent authority, the court does not reach those other authorities. *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 49 (1991) ("[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct.").

[61] *Agency Premium Res., Inc. v. C.K. Patrick, Inc.*, 47 F.3d 1178 (10th Circuit 1995) (table decision) (citing *Chambers*, 501 U.S. at 33).

[62] *LaFleur v. Teen Help*, 342 F.3d 1145, 1149 (10th Cir. 2003).

[63] *Chambers*, 501 U.S. at 44.

[64] *Archibeque v. Atchison, Topeka and Santa Fe Ry. Co.*, 70 F.3d 1172, 1175 (10th Cir. 1995) (citation modified).

disregard of the rules,'" while fault concerns "the reasonableness of the conduct—or lack thereof—which eventually culminated in the violation."[65]  A fact is shown by clear and convincing evidence when "the ultimate factfinder [gains] an abiding conviction that the truth of its factual contentions are 'highly probable.'"[66]  A court may issue terminating sanctions against a party to "sanction bad-faith conduct that abuses the judicial process, including pre-litigation acts that directly affect a lawsuit."[67]

In *Ehrenhaus v. Reynolds*,[68] the Tenth Circuit established five factors to consider when determining whether dismissal sanctions are appropriate: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions."[69]  "These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction."[70]  A sanction of dismissal is only warranted when these "aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits."[71] The burden of persuasion lies with the moving party to show the factors weigh in its favor.[72]

---

[65] *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1301–02 (D. Utah 2016).

[66] *Fontenot v. Crow*, 4 F.4th 982, 1018 (10th Cir. 2021) (citing *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984).

[67] *Xyngular v. Schenkel*, 890 F.3d 868, 873 (10th Cir. 2021).

[68] 965 F.2d 916 (10th Cir. 1992).

[69] *Id.* at 921 (citation modified).

[70] *Id.*

[71] *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir. 2007).

[72] *See Gates Rubber Co. v. Bando Chem. Indus.*, 167 F.R.D. 90, 109 (D. Colo. 1996) (stating "dispositive sanctions should only be granted where the moving-party persuades the judge to do so by evidence which is clear and convincing").

**ANALYSIS**

The court now considers whether Borys and her attorneys' conduct preceding and during their state court litigation against Ballard satisfies the elevated requirements to issue terminating sanctions. This order proceeds in two parts. The court first applies issue preclusion to the state court's factual findings that Borys and her attorneys engaged in intentional and willful misconduct against Ballard to circumvent discovery. The court then concludes the misconduct satisfies the factors required to issue dismissal sanctions against Borys but not against the other five Plaintiffs.

**I.      The Court Applies Issue Preclusion to the State Court Findings of Willful and Intentional Misconduct.**

The court first considers whether to apply issue preclusion to Judge Shaughnessy's factual findings concerning Borys's and her attorney's conduct against Ballard. In response to the court's request for additional briefing, Ballard now seeks to foreclose Borys from relitigating the state court's findings that "Borys and her attorneys engaged in intentional, egregious misconduct by unlawfully accessing, taking, using, and publicly disseminating Ballard's private and privileged materials after Borys became his litigation adversary, and that no lesser sanction could cure the prejudice caused by that misconduct."[73] Federal courts must give a state court judgment the same preclusive effect as it would receive in the courts of the rendering state.[74] Accordingly, Utah law governs whether issue preclusion applies here.[75] To grant issue preclusion, Ballard must show the following four elements are met:

---

[73] *Ballard Preclusion Reply* at 2; *see also Ballard Preclusion Brief* at 4.

[74] 28 U.S.C. § 1738.

[75] *See Thournir v. Meyer*, 803 F.2d 1093, 1094 (10th Cir. 1986) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985)) ("§ 1738 requires a federal court to look first to state preclusion law in determining the preclusive effects of a state court judgment.").

> (i) the party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication must be identical to the one presented in the instant action; (iii) the issue in the first action must have been completely, fully, and fairly litigated; and (iv) the first suit must have resulted in a final judgment on the merits.[76]

Ballard argues issue preclusion is appropriate here because all four elements are met with regards to Borys.[77]  Plaintiffs contend issue preclusion is not applicable here because only Borys was a party in the state court action, the issues are not identical, they were not fully litigated, and the state court judgment is not final while pending appeal.[78]  For the reasons discussed below, the court concludes issue preclusion applies to the state court's factual finding that Borys and her attorneys engaged in willful and intentional misconduct.

### A.  Parties Involved

The court first addresses the issue whether parties involved are identical or in privity. The parties agree only Borys and her husband were parties in the state court matter.[79]  Because no party argues the five Plaintiffs other than Borys were in privity with Borys or her husband in that action, issue preclusion does not apply to them.[80]  Accordingly, element one is met only with respect to Borys's claims.

### B.  Identical Issues

The court next considers whether "the issue decided in the prior adjudication [is] identical to the one presented in the instant action."[81]  Ballard seeks preclusion of the following

---

[76] *Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 29, 194 P.3d 956.

[77] *Ballard Preclusion Brief* at 4–9.

[78] *Plaintiffs Preclusion Brief* at 3–7.

[79] *See Borys v. Ballard,* No. 230907663 (Utah 3rd Dist. Ct. Oct. 10, 2023) Dkt. 3, *Complaint and Jury Demand*; *see also Plaintiffs Preclusion Brief* at 5.

[80] *See Ballard Preclusion Brief* at 4.

[81] *Oman*, 2008 UT 70, ¶ 29.

issues: (1) Borys improperly accessed Ballard's Google accounts; (2) she engaged in improper self-help discovery while searching the Google drive, (3) many of the documents were marked as privileged or protected work-product;[82] (4) Borys and her attorneys publicly filed the documents in multiple cases; (5) the misconduct was deliberate and egregious; (6) the misconduct lay outside the bounds of permissible litigation behavior; (7) the conduct was designed to circumvent discovery; and (8) no other adequate remedy other than dismissal exists.[83]  Ballard asserts these issues are identical to the facts this court must consider in deciding whether to apply terminating sanctions.[84]  Plaintiffs argue the issues are not identical because the governing legal standards for terminating sanctions in the state court are different from federal law.[85]  Plaintiffs further assert the state court failed to apply the proper standard for discovery sanctions set forth in the Utah Supreme Court decision in *Chen v. Stewart*,[86] which limits sanctions imposed for conduct unrelated to the merits of a case.[87]

The court concludes the issue of Judge Shaughnessy's factual findings regarding Borys and her attorneys' misconduct are identical between the state court matter and the case here.  The issues being considered for preclusion are the factual findings concerning Borys and her attorneys' conduct, not the application of the specific legal standard.  Because the factual issues

---

[82] Ballard seeks preclusion of the fact "many of the documents she selected were privileged and/or work-product protected . . . ."  However, Judge Shaughnessy did not consider whether the documents were in fact privileged or protected work-product.  He found only that they were marked as such.  *See State Court Order* at 5.

[83] *Ballard Preclusion Brief* at 4.

[84] *Id.*

[85] *Plaintiffs Preclusion Brief* at 3–4 (citing *Comput. Assoc. Intern., Inc. v. Altai, Inc.*, 126 F.3d 365, 371 (2d Cir. 1997)); *see also Comput. Assoc.*, 126 F.3d at 371 (explaining "issue are not identical when the legal standards governing their resolution are significantly different").

[86] 2005 UT 68, 123 P.3d 416.

[87] *Plaintiffs Preclusion Brief* at 4 (citing *Chen*, 123 P.3d at 428).

considered in state court case are identical to the factual issues here, this element for issue

preclusion is met.

### C.  Completely, Fully, and Fairly Litigated

The court next turns to whether the issues in the state court case were "completely, fully,

and fairly litigated."[88]  To satisfy this requirement, "the parties must [have] receive[d] notice

reasonably calculated, under all the circumstances, to apprise them of the pendency of the action

and afford them an opportunity to present their objections."[89]  An issue is fully litigated only if it

was "actually asserted and tried in [the other] case."[90]  Ballard asserts the issue of Borys and her

attorneys' conduct was fully and fairly litigated during extensive briefing and a two-day

evidentiary hearing.[91]  Plaintiffs contend the issue was not fully litigated because in the state

court matter Borys never asserted a challenge concerning whether the documents taken by Borys

that were marked as privilege were actually protected.[92]  Plaintiffs also maintain that three of the

documents marked as privileged were actually taken by Ballard from O.U.R. without permission,

and therefore were not privileged.[93]

The court concludes that the pertinent issues were fully and fairly litigated by the state

court.  Ballard seeks issue preclusion on the factual determinations regarding Borys and her

attorneys' conduct.  Between the multiple days of evidentiary hearings and extensive briefing,

Borys had ample opportunity to present her objections to the findings.  While it may be true that

---

[88] *Oman*, 2008 UT 70, ¶ 29.

[89] *Career Serv. Rev. Bd. v. Utah Dep't of Corr.*, 942 P.2d 933, 939 (Utah 1997) (citing *Copper St. Thrift & Loan v. Bruno*, 735 P.2d 387, 391 (Utah Ct. App. 1987)).

[90] *Schaer v. State ex rel. Utah Dep't of Transp.*, 657 P.2d 1337, 1341 (Utah 1983).

[91] *Ballard Preclusion Brief* at 8–9.

[92] *Plaintiffs Preclusion Brief* at 6.

[93] *Id.* at 6–7.

Borys did not assert in the state court action objections concerning whether the documents were actually privileged, she had the opportunity to do so if she wished, and the state court never made a finding on that question.[94]  Judge Shaughnessy only noted that some documents were marked as privileged or attorney work-product.[95]  Because the factual determinations being considered for preclusion do not include the question whether the documents were in fact privileged, the fact that Borys chose not to raise the issue in the state court proceeding is not relevant to whether the issues were fully and fairly litigated.

### D.  Final Judgment

Lastly, the court considers whether the first suit is considered a "final judgment on the merits" while it is pending appeal.  This question is subject to conflicting precedents under Utah state law.  Citing the 1987 Utah Court of Appeals decision in *Copper State Thrift and Loan v. Bruno*,[96] Ballard argues a "judgment or order, once rendered, is final for purposes of res judicata until reversed on appeal or modified or set aside in the court of rendition."[97]  Plaintiffs rely on the 1950 Utah Supreme Court decision in *Young v. Hansen*[98] to argue an action is pending until final determination on appeal.[99]  Plaintiffs argue *Young* has yet to be overturned and therefore controls over the more recent Court of Appeals decisions.[100]

---

[94] *See generally State Court Order.*

[95] *See, e.g., id.* at 5 ("Some of the materials Ms. Borys took and provided to her attorneys were marked on their face as subject to the attorney-client privilege or work product doctrines.").

[96] 735 P.2d 387, 391 (Utah Ct. App. 1987)).

[97] *Ballard Preclusion Brief* at 9 (quoting *Copper*, 725 P.2d at 390).

[98] 117 Utah 607, 608–09 (1950).

[99] *Plaintiffs Preclusion Brief* at 8–9 (citing *Chavez v. Morris*, 566 F.Supp.359, 360 (D. Utah 1983) (citing *Young*, 117 Utah at 608–09)).

[100] *Plaintiffs Preclusion Reply* at 6.

The court concludes that *Copper* is the correct precedent to follow here.  While it is true that *Young* has not been directly overturned, Plaintiffs do not identify, and the court is unaware, of a single state court decision relying on *Young* to hold a judgment pending appeal is not final. In contrast, Utah courts have consistently relied on *Copper* to define when a decision is final.[101] In *Youren v. Tintic School District*,[102] the Utah Court of Appeals specifically addressed the split in Utah case law and "conclude[d] that the better approach is that taken by the more recent Utah cases, which hold that a rendered judgment is final for purposes of res judicata until reversed on appeal, modified by the rendering court, or set aside by the rendering court."[103]  Additionally, the Utah Supreme Court has since cited *Copper* in decisions regarding the finality of rulings.[104]  In *Sandy City v. Salt Lake County*,[105] the Utah Supreme Court also relied upon § 16 of the Restatement (Second) of Judgments for addressing the issue of "judgments made in reliance on an adjudication that is later overturned or vacated."[106]  This issue arises only if decisions pending appeal are considered final and given preclusive effect.  In fact, Section 13 of the cited Restatement specifically provides "a judgment otherwise final remains so despite the taking of an appeal unless what is called taking an appeal actually consists of a trial de novo."[107]  Taken altogether, the court concludes that the standard established in *Copper* is the proper precedent to follow.  The factual findings made in the previous state court case are therefore final unless and

---

[101] *See, e.g.*, *Mackley v. Barney*, 2014 UT App 202, ¶ 6, 334 P.3d 502 (relying on *Copper*); *Youren v. Tintic Sch. Dist.*, 2004 UT App 33, ¶ 3, 86 P.3d 771 (relying on *Copper*); *D'Aston v. Aston*, 844 P.2d 345, 351 (Utah Ct. App. 1992) (relying on *Copper*).

[102] 2004 UT App 33.

[103] *Id.* ¶ 5 n. 3 (citing *Copper*).

[104] *See Press Publ v. Matol Botanical Int'l*, 2001 UT 106, ¶ 24; *Sandy City v. Salt Lake County*, 827 P.2d 227, 231 n.9 (Utah 1992).

[105] 827 P.2d 227 (Utah 1992).

[106] *Id.* at 230–231.

[107] Restatement (Second) of Judgments § 13, cmt. f.

14

until they are reversed upon appeal. Accordingly, the court will treat Judge Shaughnessy's judgment as final.

### E. Issue Preclusion for Dismissal Sanctions

Plaintiffs also contend that issue preclusion may not be applied to penalty dismissals.[108] Plaintiffs point to *Dawe v. Capital One Bank* in which the District of Massachusetts found that "issue preclusion is typically not applied to penalty dismissals" because "the issues have not been actually litigated."[109] However, unlike in *Dawe* where issue preclusion was asserted on the issues underlying the claim itself,[110] the court here is considering issue preclusion only for the factual determinations on Borys and her attorneys' conduct regarding the Motion for Terminating Sanctions. Those factual issues were fully litigated in the state court proceeding. The court is not considering issue preclusion on the underlying merits of Plaintiffs' Complaint, specifically their Trafficking Victims Protection Reauthorization Act claims. Accordingly, a general rule against using issue preclusion of a penalty dismissal to resolve the merits of a case is not applicable here.

Because all four elements of issue preclusion are met, the court adopts the state court's finding that Borys and her attorneys, Alan Mortensen and Suzette Rasmussen, willfully, intentionally, and without permission took and used the documents—including some marked "privileged"—in order to circumvent the discovery process and gather evidence to be used against Ballard.[111] The court does not grant issue preclusion to the state court's determination that no other adequate remedy other than dismissal exists, as this is not a factual finding but

---

[108] *Plaintiffs Preclusion Brief* at 8–10.

[109] *Dawe v. Capit. One Bank*, 456 F. Supp. 2d 236, 241 (D. Mass. 2006) (citing 18A Wright & Miller's Federal Practice & Procedure § 4440 (2002)).

[110] *Id.* at 239.

[111] *State Court Order* at 51.

rather a discretionary conclusion made by Judge Shaughnessy while applying the *Ehrenhaus* factors to the facts found.  The court therefore independently considers the question of lesser adequate sanctions.

## II.      Borys's Conduct Satisfies the *Ehrenhaus* Factors for Terminating Sanctions.

Next, the court considers Borys's conduct under the five *Ehrenhaus* factors.  The court concludes Borys's actions substantially prejudiced Ballard, constituted a significant interference in the judicial process, and were done with a high degree of culpability.  Because lesser sanctions are not a satisfactory option, terminating sanctions are warranted.

### a.   *Prejudice Against Ballard*

The first factor the court considers is "the degree of actual prejudice to the opposing party."[112]  Ballard compares the facts here to a previous case in which this court issued terminating sanctions: *Xyngular Corp. v. Schenkel*.[113]  In *Xyngular*, the court found a shareholder's prelitigation actions, which involved encouraging an IT worker to steal documents from the corporation for later use supporting his claims against it, constituted severe prejudice sanctionable with dismissal.[114]  Ballard argues Borys's conduct is similar to the sanctionable conduct in *Xyngular* because Borys took confidential documents from Ballard without permission for use in active litigation against him, which circumvented the discovery process and deprived Ballard of his right to assert privilege, seek protective orders, and control the disclosure of his private and privileged communications.[115]  Plaintiffs argue Ballard was not prejudiced by Borys's actions because Ballard delayed in bringing the Motion, the documents were

---

[112] *LaFleur v. Teen Help*, 342 F.3d 1145, 1151 (10th Cir. 2003).

[113] 200 F. Supp. 3d 1273 (D. Utah 2016).

[114] *Id.* at 1327.

[115] *Motion* at 10–11 (citing *Xyngular*, 200 F. Supp. 3d at 1321–24).

16

inconsequential to the legal elements of the claims, and none of the documents were published in this case.[116]

The court finds Borys's conduct prejudiced Ballard and weighs in favor of dismissal. As in *Xyngular*, Ballard was deprived of the important rights and protections afforded litigants by the formal discovery process. Numerous potentially confidential documents and communications were made public, including potentially privileged materials. Whether or not the privilege had been waived in one or more of the documents is beside the point. It is not for Borys and her attorneys to decide, it is ultimately for the court to decide. Preventing the court from doing so deprived Ballard of meaningful discovery protections and the established processes under the Federal Rules of Civil Procedure.

Plaintiffs' assertion that Ballard was not prejudiced because the documents are inconsequential and not used to support any legal claims is undermined by their own decision to file the documents in the first place. Beyond protecting a party from unfair litigation disadvantage, the managed discovery process guards against the improper disclosure of embarrassing or oppressive materials.[117] This is precisely the concern here, and Ballard was prejudiced when he was not afforded the opportunity to seek such protections. Nor does the fact Ballard waited for adjudication of the Motion in the state court case before proceeding here indicate he was not prejudiced. Considering the substantial time and effort expended in litigating the issue in the state court matter, including a two-day evidentiary hearing, it was a prudent and

---

[116] *Opposition* at 13–14.

[117] *See Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995) (discussing Federal Rule of Civil Procedure 26(c) providing a court the authority to make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression").

efficient use of resources not to conduct the same fact-intensive process simultaneously twice in two separate courts.

Lastly, the fact the documents were filed in the state court case does not detract from the prejudice toward Ballard here. Borys's actions occurred while she was already in an adversarial litigation relationship with Ballard. Her and her attorneys in this case are now knowledgeable of potentially privileged information which could be applicable to his defense here, even if the documents themselves are not publicly filed. This too prejudices Ballard's ability to mount an effective defense. This factor strongly weighs in favor of ordering dismissal sanctions.

### b.  Interference in Judicial Process

The second factor the court considers is the amount of interference with the judicial process.[118] Borys's misconduct has significantly interfered with the judicial process across multiple cases. Plaintiffs again argue there has been no such interference in this case because the documents were only filed in the state court litigation. This misses the point. Borys obtained a litigation advantage through her actions circumventing discovery. Her knowledge of Ballard's confidential communications advantage her in this case, regardless of whether the documents are filed here. By avoiding discovery, Borys interfered with the very judicial procedures meant to prevent such improper advantages. And in addition to harming Ballard, Borys's misconduct—some of which occurred even after filing suit—undermines the integrity of the proceedings in at least two cases. This factor weighs in favor of dismissal.

---

[118] *Ehrenhaus*, 965 F.2d at 921.

18

### c. Culpability

The third factor the court considers is Borys's culpability.[119]  Borys's actions were willful, taken in bad faith, and with fault.  Borys intentionally combed through Ballard's confidential Google accounts looking for evidence to be used against him.  Unlike in *Xyngular*, Borys was in active litigation against Ballard when much of the misconduct occurred.  Such conduct is manifestly unreasonable and in reckless disregard for the rules governing the fair, just, and orderly resolution of disputes in courts of law.  As Judge Shaughnessy noted, her actions are akin to "if she had used a key to access Mr. Ballard's office in the dark of night to secretly photocopy documents from locked file drawers, including documents that were marked as privileged."[120]

Plaintiffs' arguments to the contrary are unpersuasive.  Plaintiffs first argue Borys is not culpable because she did not actually search Ballard's documents to gather evidence but rather to "make sense of her fast-changing reality and to protect herself from possible criminal charges and the character-assassination campaign from Ballard."[121]  However, the state court explicitly found these explanations not credible considering Borys had previously stated she searched the documents to "provide proof [for] when I, and others, made our complaints public."[122]  This court agrees.

Plaintiffs also argue the court should consider the circumstances of Borys's and Ballard's abusive relationship in issuing terminating sanctions.  Plaintiffs argue that "[s]urely, a victim obtaining documents from her assailant is different than an administrative assistant obtaining

---

[119] *Id.*

[120] *State Court Order* at 6.

[121] *Opposition* at 16.

[122] *State Court Order* ¶ 82.

19

documents from her boss."[123]  But Plaintiffs do not cite, and the court is unaware of, any legal precedent that supports such a conclusion.  Without such authority, the court is unable to conclude a plaintiff may disregard the rules of litigation when she has been sufficiently harmed by the defendant.  Doing so would be inconsistent with the principles of equal protection and due process.  This counterargument does not overcome the substantial evidence of intentional, reckless wrongdoing found by the state court.  Accordingly, this factor weighs in favor of granting dismissal.

### d.  Prior Court Warning

The fourth factor the court considers is whether the court issued advanced warning that dismissal of the action would be a likely sanction.[124]  Borys was not warned that searching an adversarial party's private communications for evidence could result in dismissal.  Borys's misconduct occurred before filing her Complaint in this court and before Judge Shaughnessy became aware of any information that would warrant a warning.  A "warning is not a *sine qua non* for dismissal.  On the contrary, no notice of any type need be given by the court prior to dismissal."[125]  Therefore, the lack of warning does not preclude terminating sanctions.  This is especially true considering the flagrancy of Borys's conduct.

### e.  Efficacy of Lesser Sanctions

Having found the misconduct here to be serious and sanctionable, the court next considers the efficacy of lesser sanctions in addressing the misconduct.  Plaintiffs argue lesser sanctions would be effective, namely the exclusion of specific evidence, monetary sanctions

---

[123] *Opposition* at 9.

[124] *Ehrenhaus*, 965 F.2d at 921.

[125] *Rogers v. Andrus Transp. Services*, 502 F.3d 1147, 1152 (10th Cir. 2007) (quotation modified).

against counsel, or referral for disciplinary proceedings.[126]  Plaintiffs represent that after Borys

provided the documents to her counsel, the attorneys unilaterally made the decision to use

them.[127]

The court finds alternative sanctions insufficient to address the misconduct and prejudice

against Ballard.  Exclusion of evidence would be insufficient here because Plaintiffs have not (so

far) relied upon or used the documents in this case.  And exclusion would not account for the fact

that Borys and her attorneys now possess knowledge of the content of the materials improperly

accessed and retrieved.  Further, excluding the evidence does not address the harms caused by

the documents having already been made public.  Monetary sanctions against counsel and

referrals for disciplinary proceedings may well be warranted here, but such a sanction does

nothing to address or remedy Borys's own actions and the prejudice to Ballard.  A monetary

penalty on Borys is the only other sanction which could be partially effective in remedying the

underlying misconduct.  However, the courts agrees with Judge Shaughnessy's conclusion that

such a sanction would be wanting in light of Borys's failure to accept any responsibility for her

actions whatsoever.   Finally, any sanction short of dismissal would effectively enable Borys to

avoid the consequence imposed by the state court for her misconduct merely because she filed a

second lawsuit after the fact in federal court.  Accordingly, the court concludes that only

terminating sanctions are sufficient here.

### f.   Remaining Defenses

Finally, the court will address Plaintiffs' remaining defenses to issuing terminating

sanctions.  Plaintiffs assert the court may not grant equitable relief to Ballard because of his own

---

[126] *Opposition* at 16–17.

[127] *Id.* at 16 ("Only Ms. Borys played any role in acquiring the documents.  But once acquired, they were given to counsel who unilaterally made the decisions on when and how to use them.").

misconduct under the doctrine of unclean hands.[128]  Plaintiffs further contend equitable remedies are unavailable here since Ballard is also pursuing a defamation counterclaim against Plaintiffs in state court, which provides adequate legal remedies.[129]  Lastly, Plaintiffs argue Judge Shaughnessy's determination that dismissal sanctions in the state case were sufficient precludes this court from also issuing dismissal sanctions.[130]  None of these arguments are persuasive.

1.  Unclean Hands

Plaintiffs claim Ballard stole documents from O.U.R. and is therefore precluded by his own malfeasance from obtaining terminating sanctions as relief.[131]  The unclean hands doctrine bars equitable relief when the party seeking relief has engaged in "unlawful, unconscionable, or inequitable" conduct.[132]  Courts possess discretion in deciding whether to apply the doctrine.[133]  To support their position, Plaintiffs rely on *Fayemi v. Hambrecht and Quist, Inc.,*[134] in which the Southern District of New York held "a party will be denied equitable relief where it has itself acted unconscionably in relation to the matter at issue to the detriment of the other party."[135]  Plaintiffs point to a memorandum from O.U.R.'s counsel asserting the organization's sole ownership over three marked-privileged documents which Borys took from Ballard as evidence of Ballard stealing the organization's documents.[136]

---

[128] *Opposition* at 17–18.

[129] *Id.* at 18.

[130] *Plaintiffs Preclusion Brief* at 8–10.

[131] *Opposition* at 18.

[132] *CGC Holding Co., LLC v. Hutchens*, 974 F.3d 1201, 1214 (10th Cir. 2020).

[133] *Id.*

[134] 174 F.R.D. 319, 326 (S.D.N.Y. 1997).

[135] *Opposition* at 18 (quoting *Fayemi*, 174 F.R.D. at 326).

[136] Dkt. 85-1, *Demand to Cease Use of and Destroy Privileged Documents*.

Plaintiffs' argument for applying the unclean hands doctrine here falls short for several reasons. First, even assuming Ballard did take the documents from O.U.R. without permission, Ballard's actions would have been to the detriment of O.U.R., not to Borys. Second, the circumstances surrounding Ballard's removal of the documents from O.U.R. have not been established, but they are not alleged to be analogous to Borys's misconduct. Unlike with Borys, Ballard and O.U.R. were not in active litigation when he took the documents, nor is there any indication he was considering filing suit against the organization. Third, even if Ballard had unclean hands in taking the documents from O.U.R. and O.U.R. is the sole rightful possessor of the privilege for the documents, it does not change the fact that Borys took and made public documents clearly marked confidential or privileged.[137] It does not lessen her culpability for intentionally circumventing the discovery process. Accordingly, the court declines to exercise its discretion to apply the doctrine of unclean hands to bar relief for Ballard.

2. Adequate Legal Remedy

The court next considers Plaintiffs' argument that equitable remedies are unavailable here because Ballard is also pursuing a defamation counterclaim against Plaintiffs in state court, which provides adequate legal remedies.[138] The court finds otherwise. Whether Ballard prevails on his defamation claim bears no relation to Borys's misconduct here. A defamation lawsuit addresses only whether Ballard has been defamed through false public statements; it does not address whether he has been prejudiced by the unauthorized taking of confidential and potentially privileged documents and publication thereof. Accordingly, a legal remedy remains wanting, and equitable relief is not precluded here.

---

[137] And this court is equipped to deal with any misconduct Ballard may have engaged in by thoroughly considering the specific facts, the relevant standards, and carefully balancing the appropriate factors—as it has done here.

[138] *Opposition* at 18.

3. Preclusion by the State Court Order

Lastly, the court turns to Plaintiffs' argument that the court is precluded from issuing terminating sanctions because Judge Shaughnessy found "dismissal is a sufficient sanction under the circumstances" and declined to award Ballard costs and attorneys' fees.[139] Plaintiffs assert that issuing terminating sanctions here would violate 28 U.S.C. § 1738 requirement that this court give the state court preclusive effect as it contradicts Judge Shaughnessy's decision to limit sanctions to only dismissal in that case.[140]

The court disagrees. It would be illogical for the court to read the State Court Order as precluding terminating sanctions in other cases arising from the same facts and similar causes of action. Doing so would allow Borys to readily circumvent the consequences of the state court decision to nonetheless press forward in other courts with essentially the same claims as were dismissed there. Further, the case here was ongoing when Judge Shaughnessy issued his decision dismissing Borys's claim. If Judge Shaughnessy intended that his conception of "sufficient" sanctions included only dismissing the state court claims, he could easily have said that Borys may still pursue her outstanding claims in federal court. However, the state court order did not include any mention of Borys's claims here.[141] Accordingly, the court will not read the state court's decision not to award costs and fees to preclude terminating sanctions here.

In conclusion, four of the five *Ehrenhaus* factors weigh strongly in favor of issuing terminating sanctions. The remaining notice factor is not determinative because the misconduct occurred before Judge Shaughnessy became aware of the issue. Accordingly, the Motion is granted with regards to Borys, and the court dismisses her claims with prejudice.

---

[139] *Plaintiffs Preclusion Brief* at 9 (citing *State Court Order* at 57).

[140] *Id.* at 9–11.

[141] *See generally State Court Order*.

24

**III.**    **Sanctions Against Other Plaintiffs Are Not Appropriate.**

Next, the court considers whether terminating sanctions against the other Plaintiffs are appropriate.  Ballard argues dismissal is necessary because the other Plaintiffs share the same legal counsel and strategy as Borys, and that they benefited from the misconduct when the attorneys filed the improperly obtained documents in press releases and filings in their separate state court case against Ballard.[142]

Ballard's arguments are unpersuasive for several reasons.  First, Judge Shaughnessy's findings of willful and deliberate misconduct and his issuance of terminating sanctions were not made with regards to the other Plaintiffs because they were not parties in the state court matter.[143]  Only Borys and her husband were the plaintiffs in *Borys v. Ballard,* No. 230907663.  Because the other Plaintiffs were not parties there, issue preclusion is unavailable.

More importantly, Ballard has not provided evidence showing the other five Plaintiffs acted with the "willfulness, bad faith, or some fault" necessary to impose the extreme sanction of dismissal.[144]  Unlike Borys, the other Plaintiffs did not actively monitor Ballard's email account or comb through his confidential documents without authorization.  No evidence presented indicates the Plaintiffs themselves instructed Borys to search the Google accounts, nor does Ballard show the other Plaintiffs directed the attorneys to file the documents in their case with knowledge of their improper source.

Without evidence of the other Plaintiffs' willful and intentional wrongdoing, their conduct does not warrant dismissal of their claims under the *Ehrenhaus* factors.  Ballard was indeed prejudiced by their attorneys' decision to publicly file the wrongfully obtained documents

---

[142] *Reply* at 4–5.

[143] *See State Court Order*.

[144] *Archibeque*, 70 F.3d at 1175.

in their case, and such action did interfere with the judicial process for the reasons discussed in the previous section. However, unlike with Borys, these were actions taken by the attorneys alone. The important factor of culpability of the litigants here is therefore lacking to a degree sufficient to justify dismissal. And considering their lower degree of culpability, effective lesser sanctions remain available, such as barring future use of the documents filed in their state court case. Accordingly, the Motion is DENIED with regards to the other Plaintiffs.

## IV.    Disqualification of Plaintiffs' Attorneys Mortenson and Rasmussen

The court now turns to whether to disqualify Alan Mortensen and Suzette Rasmussen—the attorneys who engaged in the misconduct in the state court matter—from representing the remaining Plaintiffs. At oral argument, Plaintiffs' counsel represented they are actively searching for new counsel to replace them, but have been unable to find new representation for their clients while the Motion for Terminating Sanctions remains pending.[145] Because counsel expressed their intention not to continue representing the remaining Plaintiffs beyond the resolution of this issue, the court will not decide the question of disqualification at this time.

**CONCLUSION**

For the reasons discussed above, the court GRANTS Ballard's Motion with regards to Borys, and DENIES the Motion with regards to the other five Plaintiffs.[146] Borys's claims are DISMISSED with prejudice.

---

[145] *Minute Entry.*

[146] Dkt. 39.

SO ORDERED this 29th day of June, 2026.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge